631 So.2d 89 (1994)
Mark WALKER, Plaintiff-Appellee,
v.
V.J. STEGALL, Defendant,
Marshall L. Sanson, Appellant.
No. 25423-CA.
Court of Appeal of Louisiana, Second Circuit.
January 19, 1994.
*90 Donald & Gates, Monroe, by Ronald Kip Gates and Nelson Cameron, Shreveport, for Mark Walker, plaintiff-appellee.
Jim Norris, Monroe, for Delores Stegall, Ty Parker & Chad Parker, intervenors.
Marshall Sanson, Monroe, appellant, in pro per and for V.J. Stegall.
Before MARVIN, LINDSAY and HIGHTOWER, JJ.
MARVIN, Chief Judge.
Having initially represented the nominal defendant, Stegall, a judgment debtor, Attorney Sanson appeals a judgment against him for $3,121.25 in attorney fees and $229.36 in court costs, as sanctions for filing pleadings "for any improper purpose," under CCP Art. 863.
On the judgment creditor's motion, the trial court sanctioned Sanson because he unduly delayed filing, until the day the judgment debtor's non-exempt movable property was to be sold at a judicial sale, a Motion of Intervention, seeking a TRO and injunctive relief on behalf of the judgment debtor's wife and children who claimed ownership of some of the seized items.
We reverse. CCP Art. 1092.

FACTS
A judgment of March 12, 1992, awarding Walker damages against Stegall in a defamation action was not appealed and became definitive. On August 7, 1992, Walker made the judgment executory and a writ of fifa issued, resulting in the seizure. A judicial sale of the seized movables was advertised to be held on September 9, 1992.
*91 Before the hour of the sale on September 9, Sanson made the filing on behalf of Stegall's wife and children and obtained the TRO. The TRO preventing the sale was founded on allegations that one or more of the intervenors owned some of the items that were to be sold. Sanson had announced his clients' intention to enjoin the sale less than 30 days before September 9.
On September 10, 1992, Sanson filed a petition for Chapter 13 bankruptcy in U.S. Bankruptcy Court, staying execution of judgments against Stegall. On October 26, 1992, the bankruptcy court dismissed Stegall's bankruptcy petition, finding his Chapter 13 plan to have been proposed in bad faith.
On January 4, 1993, Walker formally sought CCP Art. 863 sanctions and CCP Art. 3608 damages, including attorney fees, against Stegall, the intervening parties, and Attorney Sanson. New counsel then enrolled on behalf of the intervenors. Walker contended the motion for intervention was filed in bad faith and merely as a delaying tactic to gain time to file the bad faith bankruptcy petition.
After a hearing the trial court granted judgment for attorney fees and costs on March 15, 1993, only against Sanson. The court reasoned that Sanson waited until the last minute to file the intervention notwithstanding that Sanson knew of the intervenors' claim of ownership for approximately one month before September 9. The court emphasized that the expense of advertising the sale had been incurred by Walker.
We emphasize, however, that the trial court, on Sanson's suspect filing, released 20 of 31 items from the seizure after finding that the items were in fact owned by an intervenor. In the judgment sanctioning Sanson, 20 items were adjudged to be either the property of Stegall's wife (12) or children (8), while 11 items in question were found to be community property of Stegall, subject to seizure and sale.
We also emphasize that the filing of the motion for intervention and injunctive relief by a third party claiming ownership before the sale occurs is statutorily authorized:
A third person claiming ownership of... property seized may assert his claim by intervention. If the third person asserts ownership of the seized property, the intervention may be filed at any time prior to the judicial sale of the seized property, and the court may grant ... injunctive relief to prevent such sale before an adjudication of his claim of ownership.
Art. 1092 in part. Our emphasis.
In all cases the expense of the advertisement has already been incurred when a third person who claims ownership of property that is advertised for sale successfully intervenes and obtains a TRO from the court "to prevent such sale," as Art. 1092 clearly contemplates. The TRO of a judicial sale always causes delay and an increase in the cost of re-advertisement, but not, in every case, the unnecessary delay or needless increase in cost as Art. 863 contemplates, especially when the ownership in the third person intervenor is later adjudicated.
Similarly in such circumstances, an intervention that is filed shortly before the hour of the sale is not to be deemed to be "interposed for any improper purpose" solely because the lawyer has announced to others after the advertisement his intention to enjoin the sale. In all circumstances, judicial sale or otherwise, an attorney who signs a pleading must make the Art. 863 inquiry into the facts and the law and must recognize his other 863 obligations to avoid unnecessary delay and needless increase in costs. Each case imposing 863 sanctions must stand on its own particular facts.

SANCTIONS
CCP Art. 863 provides that a signature of an attorney constitutes certification that pleadings are not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. The proper purpose certification is separate and distinct from the certification that the pleadings are well grounded in fact and warranted by existing law. Matter of Jones, 117 B.R. 415 (N.D.Ind.1990); U.S. v. Allen L. Wright Development Corp., 667 F.Supp. 1218 (N.D.Ill. 1987).
*92 We cannot agree that Sanson filed the intervention for an "improper purpose" as contemplated by CCP Art. 863. Compare Jackson v. Campco of Monroe, Inc., 623 So.2d 1380 (La.App. 2d Cir.1993), where the petition of an attorney on behalf of a client was found to be not warranted by existing law or any extension thereof.
Several cases have discussed the purpose of Art. 863 and the circumstances under which sanctions may be imposed and the standards for appellate review. These cases include Diesel Driving Academy, Inc. v. Ferrier, 563 So.2d 898 (La.App. 2d Cir.1990); Fairchild v. Fairchild, 580 So.2d 513 (La. App. 4th Cir.1991) and others cited hereafter.
CCP Art. 863 is intended only for exceptional circumstances. Sanctions should not be imposed on a lawyer simply because the trial court finds a particular argument or ground for relief to be unjustifiable, without merit. Fairchild, supra. Where there is even the slightest justification for the assertion of a legal right, sanctions are not warranted. Loyola v. A Touch of Class Transp. Serv., 580 So.2d 506, 513 (La.App. 4th Cir. 1991).
Rule 11, FRCP, is the source of our Art. 863. Federal decisions afford us guidance for our interpretation and application of Art. 863. Diesel Driving Academy, supra; Romero v. Chris Crusta Flying Service, 587 So.2d 803, 805 (La.App. 3d Cir.1991). Rule 11 [and CCP Art. 863] seek to balance the need to curtail abuse of the legal system with the need to encourage creativity and vitality in the law. Diesel Driving Academy, Inc., supra, citing Gaiardo v. Ethyl Corp., 835 F.2d 479 (3d Cir.1987).
Sanson contends that the trial court speculated as to his motive for the filing on the day the sale was to be held. We agree that his motion to intervene and temporarily restrain and enjoin the judicial sale of seized items of property was well grounded in fact and warranted by law as to 20 of the 31 items. CCP Art. 1092. This record, however, does not contain a factual basis for the conclusion that Sanson's filing was made for an Art. 863 "improper purpose (unnecessary delay or needless increase in cost)" simply because it was filed after the advertisement and just before the hour of the sale.
The items were seized after August 7 and the sale was advertised on some unspecified date more than 10 days before September 9. LRS 13:4341. Other dates and events are simply not shown in this record.
Under the recited circumstances, also of no moment are the facts that intervenors gained the release only of some of the seized items after a hearing and that the bankruptcy court later found Stegall's Chapter 13 plan, filed September 10, to have been filed in bad faith.
Sanson was acting within the contemplation and authority of CCP Art. 1092, unlike the attorney in Gulf Coast Bank v. Robino, 1993 WL 77243 (La.App. 3d Cir.1993), who filed an intervention and obtained a TRO to enjoin a judicial sale on the day the sale was to be held. That attorney was found to have purposely engaged in dilatory tactics before and after the intervention, which itself was found to have been not "well grounded" in law and of a dilatory nature.

DECREE
We reverse and render judgment rejecting Walker's demands for sanctions against Sanson. Costs here and below in the sanctions proceeding are assessed against the appellee, Walker.
HIGHTOWER, J., concurs.