656 So.2d 1055 (1995)
James S. BREUHL
v.
HERCULES CONCRETE PUMPING, INC., and Utica Mutual Insurance Company.
No. 94-CA-2311.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 1995.
*1056 Denis Paul Juge, Frank R. Whiteley, III, Juge, Napolitano, Leyva & Guilbeau, Metairie, for appellant.
Edward R. Drury, Jefferson, for appellee.
Before SCHOTT, C.J., and CIACCIO and LOBRANO, JJ.
CIACCIO, Judge.
This is a worker's compensation case. Defendants appeal from a judgment of the trial court ordering defendant to pay weekly compensation benefits and past and future medical expenses to plaintiff, and awarding attorney's fees to plaintiff's counsel. For the reasons stated herein, we affirm.

FACTS
On August 24, 1984, plaintiff, James S. Breuhl, who was 20 years old at the time, injured his right leg during the course of his employment with Hercules Concrete Pumping, Inc. ("Hercules"). While working as a concrete pump operator, Breuhl slipped into the hopper portion of a pumping machine where his leg became entangled in the agitator blade in the machine. Dr. Thomas Cashio was called to the scene of the accident to assist in removing plaintiff's leg from the machine. Plaintiff was then transported by helicopter to West Jefferson Hospital where *1057 he underwent several surgical procedures and remained for almost four months.
Immediately following this accident, plaintiff received weekly compensation at the rate of $245.00 per week paid by Utica Mutual Insurance Company ("Utica"), the insurer for Hercules. He also received medical and physical therapy payments. In November of 1987, these payments were converted by Utica to supplemental earnings benefits and then terminated.
Breuhl then filed a claim with the Commissioner of the Office of Worker's Compensation, which recommendation was rejected by plaintiff and the insurer. Subsequently, on August 26, 1988, Breuhl filed this civil action against Hercules and Utica for reinstatement of full benefits, medical expenses, as well as penalties and attorney's fees based on defendants' arbitrary termination of benefits.
A hearing was scheduled in the trial court for March 21, 1989. Prior to this hearing, the parties entered into a consent judgment, which provided:
IT IS HEREBY ORDERED THAT the defendants pay the plaintiff worker's compensation benefits at a rate of $245 per week retroactive to November 22, 1987 and continuing while the plaintiff is a student in good standing at Delgado Community College, but no later than June of 1990, with a credit for any amounts previously paid in Supplemental Earnings Benefits.
IT IS FURTHER ORDERED THAT defendants be given three (3) months from the signing of this Judgment to file a Rule to prove to the satisfaction of the court that the plaintiff's average weekly wage entitled him to a compensation rate lower than the maximum rate of $245.00 per week;
IT IS FURTHER ORDERED THAT in the event defendants are successful in supporting a worker's compensation rate less than $245.00 per week, defendants will be entitled to a credit against future compensation owed for any overpayment of benefits as a result of having paid the plaintiff weekly benefits in the amount of $245.00 in the past; ...
IT IS FURTHER ORDERED THAT defendants pay all related medical bills, including the bill from Dr. Stuart Phillips and any charges for testing ordered by Dr. Phillips, any bills for past treatment of gastroenteritis by Dr. Gary Carroll, and any charges for psychiatric treatment by Dr. Oliver Sanders incurred through the date of trial;
IT IS FURTHER ORDERED THAT defendants pay for future psychiatric treatment up to $5,000.00, and that any reasonable and necessary psychiatric treatment above that amount must be submitted to the court for approval pursuant to a Rule to show Cause brought by the plaintiff, with the plaintiff bearing all costs, including attorney's fees, of such a rule as well as the burden to prove the reasonableness and necessity of such further treatment;
* * * * * *
IT IS FURTHER ORDERED THAT plaintiff's claim for reconsideration of the court's prior award of attorney's fees is hereby denied; however, plaintiff's right to claim future attorney's fees and penalties is reserved and plaintiff's right to appeal the attorney's fees previously set in this matter is reserved.
This judgment was signed by the trial court on April 5, 1989. On May 16, 1989, defendants filed a Rule to Reduce Benefits. At about the same time, plaintiff filed a Motion to Determine the Arbitrary and Capricious Conduct of Defendant. At the hearing on these matters, defendants introduced wage records from Breuhl's employment with Hercules indicating the average weekly wage based on the last four full weeks of work did not support an award of $245.00 per week.
On June 29, 1990, the trial court rendered a judgment reducing the weekly rate of compensation benefits to $222.13 and also awarded plaintiff's counsel attorney's fees in the amount of $5,000.00 for efforts made in reinstating Breuhl's benefits. Defendants requested a rehearing on this judgment, which was denied, and defendants then sought supervisory review by this court.
*1058 On April 10, 1991, this court rendered the following order:
The Trial Court erred in denying defendants' request for rehearing on the rule or an amended judgment. Accordingly, the June 29, 1990 judgment is vacated and set aside, and this matter is remanded for contradictory hearing to determine whether there has been a change in conditions which would support modification of the payment period set in the April 5, 1989 judgment and whether defendants are entitled to a credit for overpayment.
As ordered by the judgment of April 5, 1989, defendants paid $5,000.00 to Dr. Oliver Sanders for psychiatric treatment of Mr. Breuhl, as well as all past medical bills. Defendants also paid weekly benefits of $245.00 per week until June of 1990, at which time the weekly benefits were terminated. At this time, defendants also discontinued payment of plaintiff's medical expenses and refused to pay any further charges by Dr. Sanders.
On March 29, 1993, plaintiff filed a Rule to Determine Compensation Benefits based on the order of this Court. On April 5, 1993, plaintiff filed a Rule to Show Cause why defendants should not be ordered to pay all medical bills incurred by plaintiff and all future medical expenses, as well as attorney's fees incurred in prosecution of the rule. A contradictory hearing was held by the trial court on these matters on December 7, 1993.
At this hearing, plaintiff testified regarding the circumstances of his injury. He testified that he was initially treated by Dr. Cashio, but was discharged in 1987. In 1988, he began seeing Dr. Stuart Phillips an orthopedic surgeon referred by Dr. Cashio and Dr. Sanders, a psychiatrist. Dr. Phillips recommended that he have surgery to stabilize his knee. Plaintiff testified that although he had attempted to work at several different jobs since the injury, working and increased activity caused the condition of his leg to deteriorate.
Plaintiff also introduced the deposition testimony of Dr. Sanders and the depositions of Dr. Phillips, as well as the medical bills from these physicians and bills for prescription medicine. The total amount of the outstanding medical bills was $32,686.55. In his deposition, Dr. Sanders stated that plaintiff had a chronic condition of posttraumatic stress disorder which was related to the accident and required ongoing psychiatric treatment. Dr. Phillips stated that he wanted to perform a tendon transfer on plaintiff's knee as well as surgery to correct plaintiff's condition known as "claw toe." Dr. Phillips stated that in order to perform these surgeries, plaintiff would have to be immobile for six months prior to surgery to keep the leg free of infections. Dr. Phillips also stated that plaintiff's back condition of spondylolisthesis, which has been exacerbated by the injury to plaintiff's knee, may require surgical correction in the future.
Defendants introduced the deposition testimony of Dr. Thomas Cashio, the physician who performed numerous surgeries on plaintiff following his injury. Dr. Cashio stated that he did not believe that plaintiff required any further surgery. Dr. Cashio stated that plaintiff had reached maximum medical cure and that he could perform sedentary work.
Defendants also introduced the expert testimony of Todd Capielano, a vocational rehabilitationist, who stated that he had performed a labor market survey on behalf of plaintiff and had determined that plaintiff had the potential of earning between six and nine dollars per hour.
The trial court took the matter under advisement, and on June 1, 1994 rendered judgment in plaintiff's favor. The judgment stated in pertinent part as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the Plaintiff, James S. Breuhl and against the Defendants, Hercules Concrete Pumping, Inc., and Utica Mutual Insurance Company, awarding supplemental earnings benefits in the amount of TWO HUNDRED TWENTY-TWO AND 13/100 ($222.13) DOLLARS per week, until revised or terminated by the Court.
IT IS FURTHER ORDERED that there be judgment herein in favor of the Plaintiff, James S. Breuhl, and against the Defendants, Hercules Concrete Pumping, *1059 Inc., and Utica Mutual Insurance Company, for past due compensation benefits for the period of June 11, 1990, to the date of this Judgment in the sum of THIRTY-SIX THOUSAND EIGHT HUNDRED AND 17/100 ($36,800.17) DOLLARS, which represents supplemental earnings benefits in the amount of $222.13 per week less a credit for income earned by the Plaintiff from June 11, 1990, to the date of this Judgment, plus judicial interest on each past-due compensation payment from the date due until paid.
IT IS FURTHER ORDERED that there be judgment herein in favor of the Plaintiff, James S. Breuhl, and against the Defendants, Hercules Concrete Pumping, Inc. and Utica Mutual Insurance Company, for medical expenses incurred by the Plaintiff in the sum of THIRTY-TWO THOUSAND SIX HUNDRED EIGHTY-SIX AND 55/100 ($32,686.55) DOLLARS, for treatment rendered by Dr. Oliver Sanders and Dr. Stuart Phillips, and for prescription medicine.
IT IS FURTHER ORDERED that the Defendants are cast for the payment of future medical expenses incurred by the Plaintiff as a result of his injury on August 24, 1984.
* * * * * *
IT IS FURTHER ORDERED that the Defendants are cast for the payment of attorney's fees in connection with the trial of this matter in the amount of FIVE THOUSAND AND NO/100 ($5,000) DOLLARS.
The trial court also assigned lengthy reasons for judgment. It is from this judgment that defendants now appeal, asserting several assignments of error of the trial court.

DISCUSSION
Defendants first argue that the trial court erred in calculating plaintiff's average weekly wage and that defendants are entitled to a credit for overpayment of benefits. In awarding plaintiff $222.13 in weekly benefits, the trial court relied on the modification of benefits rendered by the court in its judgment of June 29, 1990. Although defendants contend that they introduced evidence of plaintiff's wage records at the hearing in 1990, the record before us contains no such evidence of plaintiff's wage records. The trial court apparently determined that the figure for weekly compensation set by the court in June of 1990 was accurate, and we find no basis in the record to disturb this determination.
In brief, defendants argue that based on the provisions of LSA-R.S. 23:1021(10)(a)(i), plaintiff's average weekly wage supports weekly benefits only in the amount of $186.67 per week, and that defendants are therefore entitled to a credit for overpayment. However, LSA-R.S. 23:1021(10)(a)(i) provides, in pertinent part, as follows:
[I]f the employee is paid on an hourly basis and the employee is employed for 40 hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or 40 hours, whichever is greater;...
(Emphasis added.)
Defendants contend that because the four weeks preceding plaintiff's accident show an average of 37.69 hours per week, the average weekly wage should be based on this figure. However, the four weeks relied on by defendants contain two vacation weeks, as well as one week in which plaintiff worked less than six hours. The remaining week shows plaintiff worked almost seventy hours. Under the circumstances here, we fail to find that the information relied on by defendants shows "the four full weeks" which plaintiff worked prior to his accident. We find no manifest error in the judgment of the trial court regarding the amount of weekly benefits awarded and further find that defendants failed to prove they were entitled to a credit for overpayment.
Defendants next contend that the trial court erred in awarding supplemental earnings benefits with a reduction only for actual earnings rather than for wage earning capacity. They argue that they met their burden of proving plaintiff's wage earning capacity.
Defendants argue that the worker's compensation statute, LSA-R.S. 23:1221(3)(b), as *1060 amended in 1983, specifically provides for a reduction based on "wages the employee is able to earn." In support of their position, defendants rely on the testimony of Drs. Cashio and Phillips who stated that plaintiff was able to return to sedentary employment, and to plaintiff's history, which showed that he had been attending school and maintaining some type of employment since he was discharged by Dr. Cashio. Defendants also rely on the testimony of Todd Capielano, their vocational rehabilitation expert, who testified that plaintiff had a wage earning capacity of $6.00$9.00 per hour.
However, the record shows that although Dr. Phillips initially stated that plaintiff could return to sedentary employment, he later opined that plaintiff's condition worsened as a result of being employed, and that plaintiff would have to be immobile for six months in order to have corrective surgery. Further, although Dr. Cashio testified plaintiff was able to work, the trial court stated in its reasons for judgment as follows:
In essence, with one of the most catastrophic injuries this Court has had to deal, with residual problems that all other medical witnesses indicate will be profound and permanent, and with Breuhl himself relating a devastating impact upon every fact of his waking and sleeping existence, Dr. Cashio finds practically nothing wrong with the man. Dr. Cashio's deposition testimony contains opinions and conclusions which strike this Court as being more consistent with a dogged and arbitrary philosophical bent, rather than with the actuality of this man's injuries. His testimony lacks credibility and is useless in this Court's determination of the proper disposition of this controversy.
Moreover, with regard to the testimony of Todd Capielano, the trial court stated as follows:
The Defendants offered the testimony of a vocational rehabilitation counselor who testified that, in reliance on Dr. Cashio's report that Breuhl is able to perform sedentary work, Breuhl is employable and can earn a starting salary of from six to nine dollars per hour. However, this witness admitted that he used only a "profile" of a prospective employee and did not inform potential employers of Breuhl's condition; did not consider any information of Breuhl's psychological condition; and, most significantly, did not consider any of the medical records or opinions of Dr. Phillips.
Thus, the trial court rejected the evidence presented by defendants that plaintiff is capable of sedentary employment. The trial court apparently determined that plaintiff was not able to earn more than he had actually earned during the period in question and that based on plaintiff's current condition, plaintiff was not physically able to perform any type of employment.
The trial court stated in its reasons for judgment:
Specifically, in this matter the Defendants would have Breuhl denied benefits because he can and has performed sedentary work. They ignore the fact that he is working in pain and aggravating his physical condition because the Defendants have denied him benefits, forcing him to work. What is more incongruous, however, is the fact that he will never recover or at the very least stabilize his physical condition unless he stops working, which activity aggravates his condition, and receives the medical care that is warranted. Yet, the Defendants argue that he is disqualified from receiving, and would have him denied those medical benefits and care based on the fact that he is working.
It is specifically for those reasons that this Court deems Breuhl entitled to supplemental earnings benefits without deduction for his ability to work. While the evidence is clear that Breuhl can and has worked, the evidence also establishes that he has done so only in extreme pain and discomfort and with aggravation of his medical condition.
We will not disturb the trial court's findings which are well supported by the record and are not manifestly erroneous.
Further, we find no merit in defendants' argument that the trial court erred in awarding the medical expenses of Dr. Sanders. Defendants contend that plaintiff incurred *1061 these medical expenses in contravention of the April, 1989 judgment, wherein it was agreed that any psychiatric treatment over the $5,000.00 award "must be submitted to the court for approval pursuant to a rule to show cause brought by plaintiff." However, although plaintiff incurred the expenses prior to obtaining court approval therefor, he nevertheless petitioned the lower court for approval of these expenses and submitted evidence which indicated that these expenses were reasonable and necessary. The record contains ample evidence to support the trial court's determination that the psychiatric treatment was necessary and related to the accident. We find no manifest error in the trial court's determination to award these medical expenses.
Likewise, we find no error in the trial court's judgment that weekly benefits are not to be reduced or terminated unless by order of the court. Plaintiff is entitled to supplemental earnings benefits for the duration of his disability, subject to the statutory limitations on recovery. LSA-R.S. 23:1221(3). The statute allows recovery of supplemental earnings benefits for no more than 520 weeks but gives conditions under which they may be terminated sooner. In the event plaintiff's circumstances change, defendants can petition the court for modification of the award upon proper proof of such change. The record shows that benefits had been previously terminated by defendants and defendants had voluntarily agreed to pay attorney's fees as a result of this termination. We find no abuse of the trial court's discretion in ordering court approval prior to termination or reduction of the award of benefits.
Defendants next contend that the trial court erred in assessing penalties in the form of attorney's fees in the amount of $5,000.00. A worker's compensation claimant is entitled to attorney's fees if the failure to pay claims is found to be arbitrary, capricious or without probable cause. LSA-R.S. 23:1201.2.
Defendants argue that in refusing to pay plaintiff's medical expenses, they reasonably relied on the April, 1989 consent judgment which required payment of only up to $5,000.00 in psychiatric treatment. Further, defendants contend that in terminating weekly benefits, they relied on labor market surveys which indicated plaintiff was able to return to work.
However, plaintiff concedes that defendants were not arbitrary or capricious in terminating weekly benefits or in refusing to pay the charges of Dr. Sanders. Plaintiff contends, and we find the record shows, that defendants were arbitrary and capricious in their decision to discontinue to pay for prescription medicines and for Dr. Phillips' treatment, including the necessary surgery that Dr. Phillips recommended in 1989. The trial court was not manifestly erroneous in awarding attorney's fees.
Defendants next contend that the trial court erred in awarding future medical expenses, citing Lester v. Southern Casualty Insurance Co., 466 So.2d 25 (La.1985). In Lester, the Supreme Court held that under LSA-R.S. 23:1203, liability for medical expenses arises only as they are incurred, and although plaintiff is not entitled to an award for future medical expenses, the right to claim such expenses is always reserved to the plaintiff. Id., at 27.
The trial court awarded future medical expenses, and in its reasons for judgment, stated that "[t]he Court is convinced that he is in need of further medical treatment as discussed hereinabove." The trial court noted in its reasons for judgment that Dr. Sanders testified that he believes that plaintiff needs continuing psychiatric treatment, and that the treatment could be terminated if plaintiff could manage the pain. Further, the court noted that Dr. Phillips testified that he believed plaintiff needed an operation to repair the ligaments in his knee, as well as to repair his foot, which has a condition known as "claw toe." Dr. Phillips requested authorization for this procedure from Utica, but the request was denied. Dr. Phillips also testified that plaintiff continued to complain of pain from his leg and back but was taking medication to control the pain. However, defendants discontinued paying for plaintiff's prescription medicine.
In awarding future medical expenses, the trial court was apparently referring the *1062 surgery which Dr. Phillips testified was necessary for plaintiff, to the treatment by Dr. Sanders, and to the cost of his prescription medicine prescribed by plaintiff's physicians during the term of plaintiff's disability. We find that these expenses were shown by plaintiff to be necessary and related to his accident in accordance with LSA-R.S. 23:1203(A). The trial court did not err by ordering defendants to pay for these expenses as they are incurred.
Finally, defendants contend that the trial court erred in ruling that "plaintiff carried his burden of proving by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, that Breuhl cannot perform any employment," relying on LSA-R.S. 23:1221(3)(c)(ii). Defendants argue that plaintiff failed to prove substantial pain. We disagree.
Although defendants argue that plaintiff was able to attend school and to work part-time, the record amply shows that plaintiff did so in substantial pain because of financial necessity. Plaintiff testified that he began seeing Dr. Phillips in 1988 "to see if there was anything more that he could do for me to stabilize my knee which has a lot of pain ..." Plaintiff testified he suffers with "breakouts" on his leg, which are infections due to poor circulation, which is an "ongoing constant thing" and "is very painful." He stated that when he works, the infections and the breakouts become worse. He further stated that his ankle does not have any motion to it and when his foot sits on the floor, all of his body weight rests on the right side of his ankle "which causes a lot of pain." Plaintiff further stated that the condition of his foot known as claw toe makes it very painful for him to wear shoes.
With regard to his attempts at employment prior to the trial, plaintiff stated:
I haven't really pursued gainful employment within the last eighteen months because of the pain I have been having with my leg.
Plaintiff testified that he continued to see Dr. Sanders for pain management therapy which helped him deal with the pain. Plaintiff testified that he took pain medication regularly, and that when defendants discontinued paying for the medicine, he borrowed the money to pay for it. Plaintiff testified as follows regarding the pain medication:
You [sic] got to understand that this is an awful lot of pain with this type of injury. I have asked the doctor for a stronger pain medication several times. He told me that since I was such a young man, he doesn't want to give me that strong of a pain medication because he doesn't want me to become addicted.
Dr. Phillips stated that plaintiff "is not a real complainer." Although plaintiff was taking medication for pain, Dr. Phillips stated that plaintiff "is not the kind of person that call every day and asks for medicine." Dr. Phillips later stated:
He's always complained of some pain, and he's taken pain medicine on an intermittent basis. He is a gutsy kid. He doesn't complain that much of anything, but he takes [pain medications].
The trial court specifically found that plaintiff has worked only in extreme pain and discomfort and with aggravation of his medical condition. The court was able to view plaintiff and plaintiff's leg, which the court noted was turning black due to the lack of circulation. We find that the record amply supports the trial court's determination that plaintiff was prevented from obtaining gainful employment due to substantial pain. This assignment has no merit.

CONCLUSION
Accordingly, for the reasons stated herein, the judgment of the trial court is affirmed. Defendants are to bear all costs of this appeal.
AFFIRMED.