699 So.2d 466 (1997)
G.N.B., INC. and Zurich American Insurance Company, Plaintiffs-Appellants,
v.
Richard JONES, Defendant-Appellee.
No. 29779-WCA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 1997.
*467 Allen & Gooch by Charles Martin Kreamer, Lafayette, for Plaintiffs-Appellants.
James E. Franklin, Jr., Shreveport, for Defendant-Appellee.
Before NORRIS, HIGHTOWER and GASKINS, JJ.
NORRIS, Judge.
This is an action by a workers' compensation insurer to offset comp benefits it must pay to an injured employee who is also receiving Social Security disability ("SSI") benefits. The principal issue is whether La. R.S. 23:1225 C, which requires the reduction of comp benefits so that the "aggregate remuneration" from sources specified therein does not exceed 662/3% of the employee's average weekly wage, also requires that benefits be further reduced so that the employee's "aggregate remuneration" does not exceed the maximum set by La. R.S. 23:1202 for comp indemnity benefits. We hold that it does not; and finding that by proper application of the law the insurer is entitled to no offset in this case, we reverse and render.

Factual background
Richard Jones, an employee of GNB Inc., suffered a work-related injury on February 9, 1988. He began receiving comp benefits at the statutory maximum of $261.00 per week ($1,122.30 per month) from GNB's insurer, Zurich American (collectively referred to herein as "GNB"). The maximum workers' comp weekly indemnity benefit for injuries arising in 1988 is $261.00. See La. R.S. 23:1202. In 1990 Jones also began drawing SSI. The parties stipulated that GNB and Jones each contributed 50% of Jones's SSI premiums. GNB offered in evidence a letter from the Social Security Administration stating that Jones's "total family benefit" was $993.00, and that the federal government offset his SSI by $301.60.
Jones receives $114.58 in weekly SSI benefits funded by GNB. Thus his aggregate weekly remuneration from SSI and comp is $375.58.

Evidence of wages and benefits
The parties stipulated that at the time of his injury Jones earned $11.59 per hour in cash wages. In addition, he received various benefits paid by GNB.
Dwayne A. Brown, a GNB employee and Bargain Chairman of Local 1532 of the United Auto Workers, testified that in 1988 Jones was allowed four weeks of paid vacation and 13 paid holiday days. He further testified that the union contract provided that 40 hours of the paid vacation could be applied as personal or sick time.[1]
GNB objected to this testimony, arguing that since 662/3% of Jones's cash wages alone were sufficient to exceed the statutory maximum for comp benefits under 23:1202, evidence of any greater compensation should be excluded as irrelevant. The Workers' Compensation Judge ("WCJ") overruled the objection.
GNB called in rebuttal Calvin Wright, GNB's regional Human Resources Manager. Wright testified that Jones was not required to pay federal income taxes on his group family health benefits. He also testified that Jones was entitled to 12 paid holidays, not 13.[2]
*468 GNB introduced into evidence a letter from the Social Security Administration setting forth Jones's entitlement to benefits as well as the offset taken by Social Security against that entitlement. Jones objected to the introduction of this letter on hearsay grounds, which the WCJ overruled.

Action of the WCJ
The WCJ ruled from the bench that the value of Jones's vacation/personal days and holidays should be included in the computation of his "average weekly wage." She declined to include, however, the amount that GNB paid for his health and life insurance premiums, on the basis that such benefits "extended beyond [those] that an employee would necessarily ordinarily bargain for."
After making this determination, the WCJ calculated Jones's average weekly wage at $520.67, and ruled that under 23:1225 C he was entitled to receive 662/3% of that amount, which she calculated as $373.78, in "aggregate remuneration."
The WCJ further found that GNB's 50% share of the SSI payments was $114.58 per week. Since by her calculations Jones was entitled to a maximum of $373.78 per week from both SSI and comp, she reasoned that his comp benefits could not exceed $259.20 per week. GNB's payments of $261.00 per week exceeded this amount by $1.80. She therefore awarded GNB a weekly offset of $1.80, from date of judicial demand.
GNB has appealed devolutively, reasserting its claim that aggregate remuneration cannot exceed the La. R.S. 23:1202 statutory maximum for comp benefits. Jones has answered, contending that GNB is entitled to no offset, that the trial court improperly admitted hearsay evidence regarding the amount of his Social Security disability benefits, and that the average weekly wage should include the value of his insurance benefits.

Discussion: Hearsay objection
By his first assignment Jones contests the WCJ's admission of the letter from the Social Security Administration. As noted, this letter set forth Jones's total family benefit and federal offset amount. Jones objected to this as hearsay. He renews this argument on appeal, and argues that absent this evidence there was no basis on which to calculate whether GNB was entitled to an offset.
The WCJ is not bound by technical rules of evidence or procedure, but all findings of fact must be based on competent evidence. The WCJ shall decide the merits of the controversy as equitably, summarily and simply as may be. La. R.S. 23:1317 A. Hearsay evidence is admissible at a compensation hearing, within discretionary limits. Nevertheless, inadmissible hearsay should not be received. Garvin v. Perret, 95-217 (La.App. 5th Cir. 2/14/96), 670 So.2d 1250, writ denied 96-0674 (La.5/10/96), 672 So.2d 922.
In the instant case GNB subpoenaed the Social Security Administration to produce a witness to explain the contents of the letter, but the Administration did not comply.[3] However, the WCJ accurately noted that there was no indication that the information in the letter was untrue. In fact, after first objecting, Jones stipulated to the amount of his total family benefit. Immediately thereafter, GNB's attorney stated that the parties would stipulate to the amount of offset the Social Security administration was applying to Jones's benefits; Jones did not respond. See R.p. 136. In these circumstances, and given the relaxed evidentiary standard, we conclude that the WCJ did not abuse her discretion by admitting the letter.[4]

Limitation of offset
By its first assignment GNB urges the WCJ erred in refusing to apply the § 1202 statutory maximum to Jones's benefits. *469 At the time of Jones's accident, La. R.S. 23:1225 C provided:
C. (1) If an employee receives remuneration from: (a) benefits under the Louisiana Worker's compensation law, (b) old-age insurance benefits received under Title II of the Social Security Act to the extent not funded by the employee, (c) benefits under disability benefit plans in the proportion funded by an employer, and (d) any other worker's compensation benefits, then compensation benefits under this Chapter shall be reduced, unless there is an agreement to the contrary between the employee and the employer liable for payment of the worker's compensation benefits, so that the aggregate remuneration from (a) through (d) of this subsection shall not exceed sixty-six and two-thirds percent of the average weekly wages of the employee at the time of the injury.
This section specifically provides for a reduction of comp benefits by limiting the employee's combined remuneration from various specified sources to two-thirds (662/3%) of his average weekly wage. It effectively authorizes a credit for the employer (or insurer) against its comp obligation when the employee receives other enumerated benefits. See Cousins v. City of New Orleans, 608 So.2d 978 (La.1992). The Louisiana Supreme Court has held that this section applies to SSI. Garrett v. Seventh Ward Gen'l Hosp., 95-0017 (La.9/22/95), 660 So.2d 841.
Application of § 1225 C requires the court to add all the benefits not funded by the employee; if the total exceeds 662/3% of the employee's average weekly wage, the employer (or insurer) receives an offset of the excess against its obligation to pay comp benefits. Id., at p. 8, 660 So.2d at 845, citing Juge, Louisiana Workers' Compensation, § 12.5 (1995). The Garrett court noted that any offset due to the employer under 23:1225 C(1)(C) "cannot reduce [the employee's] combined workers' compensation benefits and Social Security benefits below sixty-six and two-thirds percent of [his] average weekly wage." Id., at p. 13, 660 So.2d at 848.
It therefore appears from Garrett that so long as the aggregate benefits not funded by the employee do not exceed 662/3% of the employee's average weekly wage, then his comp benefits are not subject to reduction under 23:1225 C. GNB, however, argues that the employee's aggregate remuneration from the sources listed in § 1225 C cannot exceed the statutory maximum set by R.S. 23:1202.
At the time of Jones's accident, R.S. 23:1202 provided, in pertinent part:
A. * * * For injuries occurring on or after July 1, 1983, the maximum weekly compensation to be paid under this Chapter shall be seventy-five percent of the average weekly wage paid in all employment subject to the Louisiana Employment Security Law * * * said maximum * * * to be computed to the nearest multiple of one dollar. * * *
B. For the purposes of this Chapter, the average weekly wage in all employment subject to the Louisiana Employment Security Law shall be determined by the administrator of the office of employment security on or before August 1 of each year as of the quarter ending on the immediately preceding March 31 of each year. The average weekly wage so determined shall be applicable for the full period during which compensation is payable when the date of occurrence of injury falls within the twelve-month period commencing September 1 following the determination.
(emphasis added.)
Jones receives $261.00 per week, the § 1202 maximum for the period in which he was injured.[5]
The words "under this Chapter" in § 1202 refer to Chapter 10 of Title 23, the workers' compensation law. This section prescribes a maximum for benefits payable under Chapter 10 (compensation benefits), to be determined in the manner set forth therein. See Daigle v. Sherwin-Williams Co., 545 So.2d 1005 *470 (La.1989) (on rehearing). Compensation benefits awarded pursuant to Chapter 10 cannot exceed the statutory maximum. Id.; see also LeCroy v. Brand Scaffold Bldg. Inc., 95-1522, pp. 5-6 (La.App. 1st Cir. 2/23/96), 672 So.2d 181, 184, writ denied 96-1442 (La.9/27/96), 679 So.2d 1352.
GNB argues that if it is not allowed to limit Jones's aggregate remuneration from the sources in § 1225 C to the maximum established by § 1202 for comp benefits, it would be forced "to pay more than the statutory maximums [sic] for worker's compensation benefits." It is true, of course, that the sum of Jones's comp benefits and SSI exceeds the § 1202 limit for comp benefits. However, under this scheme GNB is not required to pay more comp benefits than § 1202 allows; that section limits only the dollar amount of the employee's comp benefits. GNB concedes that Jones's comp benefits do not exceed this maximum.
GNB nevertheless argues that this approach "ignores Louisiana's statutory maximums for worker's compensation benefits." This is incorrect; so long as Jones does not receive more than $261.00 per week (the 1988 maximum) in workers' compensation indemnity benefits, § 1202 is satisfied.[6] A plain reading of § 1225 C shows that an employee may receive aggregate remuneration exceeding the § 1202 maximum for comp benefits, so long as the aggregate remuneration does not exceed 662/3% of the average weekly wage. One familiar authority has described this result as an example of the correct application of the offset. See Niles, Juge and Cossé, LABI Workers' Compensation Desk Book, Ch. 11, p. I-25 (1990).
Finally, GNB argues that the legislature did not intend for employers to owe more indemnity to employees who collect benefits from two programs than from those who collect from only one. However, we find § 1225 C plain and unambiguous and will apply it as written. See La. R.S. 1:4; Guillot v. Brooks, 26,544 (La.App.2d Cir. 3/1/95), 651 So.2d 345, writ denied, 95-0776 (La.4/6/95), 652 So.2d 1338.
We therefore conclude that when an employee receives both SSI and comp benefits, § 1225 C allows a reduction of comp benefits only to the extent necessary to limit the employee's aggregate remuneration to 662/3% of his average weekly wage at the time of the accident. This is so even when the "aggregate remuneration" from the sources listed in § 1225 C exceeds the maximum for comp benefits established in § 1202.

Calculation of average weekly wage
Both sides contest the WCJ's calculation of Jones's weekly wage. At trial they stipulated his hourly cash wages were $11.59, or $463.60 for a 40-hour week. Jones also introduced a list of monthly benefits paid by GNB: $314.71 in group health insurance, $27.17 family dental insurance, $0.45 accidental death or dismemberment; $12.42 life insurance, $20.52 weekly indemnity, and $2.94 "Transition and Bridge." The monthly total of $378.21 yields a weekly total of $87.28. La. R.S. 23:1021(10)(b).[7] Jones also received four weeks' paid vacation and 12 paid holidays. The WCJ included the value of Jones's vacation and holiday pay as "wages," but declined to include the benefits.
For compensation purposes, "wages" means the average weekly wage at the time the worker sustains a work-related accident. La. R.S. 23:1021(10). GNB's initial argument, of course, is that Jones cannot receive any more in the aggregate, from the sources listed in § 1225 C, than the 1988 statutory maximum of $261.00, and that 662/3% of his cash wages alone exceeded that amount without the addition of any benefits. However, *471 for the reasons already expressed we have rejected this contention. For purposes of the offset, the WCJ was entitled to consider all evidence relevant to Jones's average weekly wage.
In determining the amount of pre-injury wages an employee received, the court should consider any money paid the employee, which can be regarded as remuneration or reward for his services, irrespective of whether or not paid in the form of wages. Daigle v. Sherwin-Williams Co., supra; Malone & Johnson, 14 La. Civil Law Treatise, Workers' Compensation, § 324. This should include anything of value received as consideration for work, such as tips and bonuses. See, e.g., Richmond v. Weiss & Goldring Inc., 124 So.2d 601 (La.App. 3d Cir.1960); Hodges v. Sentry Ins. Co., 492 So.2d 193 (La.App. 3d Cir.1986). Although in most claims for weekly indemnity workers' compensation the § 1202 statutory maximum eliminates consideration of fringe benefits, the jurisprudence generally holds that the value of non-cash benefits must be included. See, e.g., Antilley v. Sentry Ins. Co., 426 So.2d 1370 (La.App. 3d Cir.1983).[8]
From these authorities we conclude that Jones's benefits should have been included as part of his wages. The WCJ correctly included a prorated value of his vacation and holiday pay, $35.67 and $21.40 respectively. The WCJ should also have included the weekly value of his insurance and other benefits, $87.28. Adding these to the weekly cash wage of $463.60 yields a total of $607.95.[9]

Offset calculation
Because Jones receives both comp benefits and SSI, § 1225 C limits his combined remuneration from these sources to 662/3% of his average weekly wage. If the aggregate remuneration exceeds this amount, the employer is entitled to an offset. Garrett v. Seventh Ward Hosp., at p. 8, 660 So.2d at 845.
Jones's weekly comp benefit is $261.00; his weekly SSI benefit funded by GNB is $114.58. The issue under § 1225 C is whether the total, $261.00 + $114.58 = $375.58, exceeds 662/3% of Jones's average weekly wage.
Properly calculated, Jones's average weekly wage is $607.95. Sixty-six and two-thirds percent of his average weekly wage is therefore $405.30, an amount greater than $375.58, the aggregate remuneration from comp and qualifying SSI. Therefore GNB is not entitled to the § 1225 C offset, and the WCJ's order fixing an offset will be reversed.

Conclusion
For the reasons expressed, the WCJ correctly applied La. R.S. 23:1225 C but erroneously failed to include certain fringe benefits in calculating Jones's average weekly wage. Under the correct calculation, GNB is not entitled to any offset. The order granting an offset of $1.80 is therefore reversed and judgment is rendered dismissing the plaintiffs' claim. Costs are assessed to appellants, GNB Inc. and Zurich American Insurance Company.
REVERSED AND RENDERED.
HIGHTOWER, J., concurs in the result.
NOTES
[1] Anent the issue of sick pay, on direct examination Brown seemed to imply that employees were entitled to 40 hours of sick time in addition to the four weeks of vacation; however, on cross he explained that the total was four weeks of vacation, of which up to 40 hours could be applied to sick time. GNB's contract with UAW and Jones's local was admitted into evidence and confirmed Brown's later version of the sick time allowance. Ex. 2, Agreement, etc., Art. IX, Sec. 23(b)(1).
[2] The UAW contract provided for 13 days of paid vacation for 1985-86, but only 12 days for 1987-88. Ex. 2, Agreement, etc., Art. IX, Sec. 20(a). The WCJ used the 12-day figure to calculate Jones's average weekly wage, and Jones does not dispute this calculation on appeal.
[3] The SSA's letter appears at R.pp. 71-73. It asserted that none of the conditions of 20 C.F.R. § 401.340(b) had been met, and that the Louisiana Department of Labor OWC Hearing Rule 2150 C exempted the SSA from complying with subpoenas.
[4] We also note that a letter in the same format was admitted and utilized in the recent case of Beaird Industries Inc. v. Ebarb, 29,300 (La. App.2d Cir. 2/26/97), 690 So.2d 866.
[5] Obviously, the statute does not specify the "average weekly wage in all employment subject to the Louisiana Employment Security Law" for the period in which Jones was injured; this information is available from the Louisiana Department of Labor, Office of Employment Security. See Henson v. Handee Corp., 421 So.2d 1134, 1139 n. 6 (La.App. 2d Cir.1982).
[6] For this reason we also reject GNB's contention at oral argument that § 1225 C can be analogized to R.S. 23:1221. Benefits payable under § 1221 are subject to the § 1202 maximum because the latter limits payments made "under this Chapter," i.e., comp benefits. See Daigle v. Sherwin-Williams, supra. While § 1221 creates a right for the employee to receive comp benefits, § 1225 C simply provides for reduction of those benefits in certain cases. The "aggregate remuneration" referred to in § 1225 C refers to benefits from a variety of sources other than comp; and § 1202 limits only comp benefits, not "aggregate remuneration" from the various benefit programs.
[7] In brief Jones asserts that the weekly cash value is $87.40; this is incorrect.
[8] See also Collins v. Spielman, 200 La. 586, 8 So.2d 608 (1942); Vaughan v. Ins. Co. of North America, 482 So.2d 1014 (La.App. 3d Cir.1986); Morgan v. Equitable General Ins. Co., 383 So.2d 1067 (La.App. 3d Cir.1980); Ardoin v. Southern Farm Bureau Casualty Ins. Co., 134 So.2d 323 (La.App. 3d Cir.1961); Haas v. Globe Indem. Co., 16 La.App. 180, 132 So. 246 (La.App. 1st Cir. 1931).
[9] GNB submitted an alternative assignment of error which argued that even if the WCJ correctly interpreted § 1225 C, she made a math error which if corrected would have entitled GNB to a greater offset. This assignment, however, accepted the WCJ's computation of Jones's average weekly wage as correct. Because we have concluded that the WCJ wrongly computed his average weekly wage, we will not address this assignment.