714 So.2d 153 (1998)
TRANSPORTATION INSURANCE CO., Plaintiff-Appellant,
v.
Robert D. POOL, Sr., Defendant-Appellee.
Robert D. POOL, Sr., Plaintiff-Appellee,
v.
TRANSPORTATION INSURANCE CO. Defendant-Appellant.
Nos. 30250-WCA to 30253-WCA.
Court of Appeal of Louisiana, Second Circuit.
May 13, 1998.
*154 Alexander Stephan Lyons, Shreveport, for Appellants.
J. Peyton Moore, Haughton, for Appellees.
Before MARVIN, C.J., and NORRIS, HIGHTOWER, BROWN and WILLIAMS, JJ.
NORRIS, Judge.
Both the claimant, Robert Pool, and his employer, G.N. Batteries Inc. (and its insurer, Transportation Insurance Co., herein "GNB"), appeal the decree of the Workers' Compensation Judge ("WCJ"). For the following reasons, we reverse in part, affirm in part, and remand for further proceedings.

Procedural History
In 1983, Robert Pool suffered a work-related injury. He filed suit shortly thereafter against GNB resulting in a judgment finding him temporarily totally disabled and setting his worker's compensation benefits at $230.00 per week. Pool v. G.N. Batteries, Inc., 480 So.2d 898, 901 (La.App. 2d Cir.1985). Shortly thereafter, Pool began receiving social security disability ("SSI") benefits as well.
In 1992, GNB filed a separate petition[1] for declaratory judgment, asserting that Pool was permanently and totally disabled in order to obtain an offset under La. R.S. 23:1225 A. Although that petition was voluntarily dismissed, Pool, in separate claims, sought permanent and total disability status based on (1) the alleged judicial admission, and (2) medical and other evidence. Meanwhile, GNB filed a separate claim (1) to amend the alleged judicial admission contained in the petition, or in the alternative, to delete it and (2) to modify the 1985 judgment, claiming that Pool is no longer temporarily totally disabled, is not permanently totally disabled, and therefore is only entitled to the supplemental *155 earnings benefits provisions. All actions were consolidated. Thereafter, in a pre-trial motion, the WCJ refused to grant Pool permanent and total disability status based on the alleged judicial confession, granted GNB's motion to amend their pleadings, and reserved all other matters for trial.
On September 24, 1996, The WCJ found that (a) Pool was permanently and totally disabled, (b) fringe benefits should be included into the calculation of Pool's average weekly wage, (c) the average weekly wage was $486.27, (d) the "Garrett"[2] offset was $22.13 per week, and (e) Pool's claims for attorney fees and penalties were without merit. Thereafter, the WCJ granted a motion for new trial and amended its prior decision to modify the effective date of the "Garrett" offset. Both parties appeal raising various assignments of error.

Discussion: Permanent Total Disability Status ("PTD")
The governing law in a compensation action is that which was in effect at the time of the alleged injury. Bradley v. Justiss Oil Co., 618 So.2d 646 (La.App. 2d Cir.1993); Bruno v. Harbert Int'l Inc., 593 So.2d 357 (La.1992). At the time of Pool's accident, La. R.S. 23:1226 D provided:
Prior to the director recommending or the court adjudicating an injured employee to be [PTD], the director or court, whichever the case may be, shall determine whether there is reasonable probability that, with appropriate training or education, the injured employee may be rehabilitated to the extent that such employee can achieve suitable gainful employment and whether it is in the best interest of such individual to undertake such training or education.
Neither the opinion on the merits nor the judgment itself indicates the finding required by § 1226 D. In the absence of the mandatory rehabilitative determination under § 1226 D, the finding of PTD is unauthorized. See Thomas v. Union Tank Co., 94-778 (La.App. 3d Cir. 12/7/94), 647 So.2d 581; City of Crowley v. Comeaux, 93-1116 (La. App. 3d Cir. 4/6/94), 638 So.2d 658 writ denied 94-1184 (La.6/24/94), 640 So.2d 1355. Therefore, we reverse the WCJ's determination that Pool was PTD and remand the case for a proper determination of Pool's rehabilitation prospects.[3]

Calculation of the Average Weekly Wage-Overtime Hours
Both parties assign as error the WCJ's calculation of the average weekly wage. The parties have stipulated that at the time of Pool's injury, he was paid $9.49 per regular hour. Under La. R.S. 23:1021(10)(a)(i), the average weekly wage for an employee paid on an hourly basis employed for forty or more hours shall be determined by:
his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, which ever is greater[.]

Id. (emphasis added).
Pool had taken two weeks of paid vacation, one of which occurred within the four weeks prior to the accident. Without comment, the WCJ multiplied Pool's hourly rate by 40 hours, apparently reasoning that Pool's average actual hours worked for the four weeks prior to the accident were less than the 40-hour presumption. Thus, the WCJ determined that Pool's actual wages were $379.60. This could only be accomplished by counting a vacation week that occurred in the fourth week as zero work hours.
Pool contests the failure of the WCJ to include overtime hours, wherein he earned "time and a half," in calculating the average weekly wage as error. However, the inclusion of overtime hours would still result in a 40 hour presumption if the vacation week ending on July 17, 1983, is included.[4] It is settled that overtime is to be considered into *156 the calculation of a claimant's average weekly wage. Graham v. Georgia-Pacific Corp., 26-165 (La.App.2d Cir. 9/23/94), 643 So.2d 352.
Pool, in brief, argues that the vacation week should not be used to calculate the average weekly wage while GNB notes the opposite. The real issue then is whether the WCJ erred in including a vacation week occurring within the month prior to the accident in calculating the average weekly wage.
The language of La. R.S. 23:1021(10) indicates the legislature's intent to favor workers. Breaux v. Hoffpauir, 95-2933 (La.5/21/96), 674 So.2d 234. This issue has been addressed in Doucet v. Crowley Mfg., 96-1638 (La.App. 3d Cir. 4/30/97), 693 So.2d 328, vacated on other grounds 97-1438 (La.9/19/97), 701 So.2d 143. In that case, claimant was injured less than four weeks after he had taken a vacation. Id., 693 So.2d at 329. The appellate court held that it was error to include the vacation week into the computation because § 1021(10)(a)(i) presumes a "four full weeks" are being used. Id., citing Breuhl v. Hercules Concrete Pumping, Inc., 94-2311 (La.App. 4th Cir. 5/16/95), 656 So.2d 1055. The court found that the information relied upon by the defendants failed to show the "four full weeks" which claimant worked prior to his accident. Doucet, supra citing Breuhl, supra. The court amended the calculation by substituting the statistics for the week worked prior to the vacation. Id., 693 So.2d at 330. See also Henry v. Bolivar Energy Corp., 95-1691 (La. App. 3d Cir. 6/5/96), 676 So.2d 681, writ denied 96-1749 (La.10/11/96), 680 So.2d 644.
In the instant case, the record shows the number of hours and wages earned for a six week period prior to the accident:

WORK HOURS WAGES
WEEK WORKED EARNED
August 7, 1983 41.7 $427.52
July 31, 1983 64.0 $639.60
July 24, 1983 32.0 $303.68
July 17, 1983 00.0
July 10, 1983 00.0 $759.20[5]
July 3, 1983 41.0 $465.01

The WCJ improperly included the vacation week as one of the "four full [worked] weeks" which resulted in a 40 hour presumption. Because the parties had stipulated to the hours and wages earned during the week immediately preceding the vacation period, the WCJ should have incorporated those statistics in computing the average weekly wage. By incorporating the week ending July 3, 1983, and including overtime hours, Pool's actual wages amount to $455.67.[6]

Calculation of the Average Weekly Wage-Fringe Benefits
GNB contends that the WCJ erred in including the value of fringe benefits in computing the average weekly wage. At trial, Dr. Melvin W. Harju, expert in economics, testified that Pool's medical and retirement benefits, plus compensated time off, equaled $106.67 per week. The evidence was admitted subject to GNB's objection to any testimony tending to expand the average weekly wage by including the value of fringe benefits. The WCJ's decision states in part:
Using Dr. Harju's calculations, Mr. Pool's average weekly wage would include the following:

1. Actual wages ($9.49 at 40 hours) $379.60
2. Medical Insurance 41.38
3. Retirement 18.60
4. Compensated time off $ 46.69
 -------
Average Weekly Wage $486.27

GNB notes that at the original trial in 1985, Pool offered no testimony concerning the value of his benefits to enhance his average weekly wage, although such evidence was available to Pool. He argues that the doctrine of res judicata, La. R.S. 13:4231, should bar Pool from relitigating this same issue under the guise of a modification.
When Pool was injured in 1983, modification of a worker's comp judgment was governed by the 1983 version of La. R.S. 23:1331. That statute was repealed and replaced by La. R.S. 23:1310.8, which is applicable *157 to Pool's claim even though he was injured before its effective date. See Adams v. Cajun Disposal, Inc., 96-1304 (La.App. 1st Cir. 3/27/97), 691 So.2d 296, writ denied 97-1106 (La.6/20/97), 695 So.2d 1365. Section 1310.8 states that the WCJ may "make such modifications or changes with respect to former findings or orders relating thereto if, in his opinion, it may be justified[.]" La. R.S. 23:1310.8 A(1).
Pool's salary alone entitled him to the maximum amount of comp benefits of $230.00 per week. See Pool, supra; La. R.S. 23:1202. Therefore, evidence concerning fringe benefits was arguably immaterial in 1983. Because GNB now seeks an offset in wake of the 1995 Garrett decision, we cannot say that the WCJ was unjustified in allowing evidence of the fringe benefits.
GNB additionally argues that even if evidence concerning fringe benefits should be presented, the value of those benefits should not have been included into calculating the average weekly wage because there was no evidence that the benefits were part of the consideration when Pool accepted employment.
The value of fringe benefits will be included in the calculation of weekly wages for the purposes of determining the compensation rate provided the giving of such benefits was fairly contemplated by the parties as they entered the contract of employment. Freeman v. Poulan/Weed Eater, 618 So.2d 618 (La.App. 2d Cir.1993). In the instant case, a 1991-1996 UAW union contract was admitted into evidence, but over GNB's objection because it post dated the accident. Dr. Harju, who also testified in 1987 about the value of Pool's fringe benefits in a connected case, stated that the benefits provided in the later contract were unchanged from Pool's benefits. However, he testified that he used the union agreement in effect on the date of the accident in arriving at his values. It can be inferred from Dr. Harju's testimony that Pool's benefits were contained in a union agreement by which he accepted employment. The benefits contained in a union agreement form part of the consideration for work. See, e.g., G.N.B., Inc. v. Jones, 29,779 (La.App.2d Cir. 8/20/97), 699 So.2d 466.
Therefore, the WCJ was not manifestly erroneous in including the value of the fringe benefits in calculating the average weekly wage. Because we amend the WCJ's decision concerning the actual wages including overtime and by including the value of fringe benefits, Pool's average weekly wage is adjusted as follows:

 1. Actual wages $455.67
 2. Medical Insurance 41.38
 3. Retirement 18.60
 4. Compensated time off 46.69
 Average Weekly Wage $562.34

"Garrett" Offset
When an employee receives both comp benefits and SSI, La. R.S. 23:1225 C limits the combined remuneration to 66 2/3% of the average weekly wage. If the aggregate remuneration exceeds this amount, the employer is entitled to an offset. Garrett, supra.
Pool's weekly comp benefit is $230.00 and his weekly SSI benefit funded by the employer is $117.21.[7] Because Pool's combined remuneration of $347.21 does not exceed $374.89 (66 2/3% of $562.34), GNB is not entitled to a "Garrett" offset, and the WCJ's order fixing an offset will be reversed. G.N.B., Inc. v. Jones, supra. Having found no offset applicable, we pretermit the assignments of error impacting upon the WCJ's calculation of the "Garrett" offset and any procedural issues regarding the effective date of the offset.

Sanctions
Pool argues that GNB has acted in bad faith by reversing its position on Pool's PTD status (motion to delete or amend its petition) without even having Pool medically examined, *158 finding him an illusory job, and in seeking a "Garrett" offset which is inapplicable. Because of these assertions, Pool argues that an award for attorney fees against GNB should have be made pursuant to La. C.C.P. art. 863 D.[8] Pool assigns as error the WCJ's express denial of attorney fees.
Like a District Court, the WCJ has discretion to impose sanctions. See McKinney v. Little, 95-177 (La.App. 3d Cir. 1995), 660 So.2d 494. Factual findings for sanctions are reviewed under the "manifestly erroneous" or "clearly wrong" standard. Unkel v. Unkel, 29,728 (La.App.2d Cir. 8/20/97), 699 So.2d 472. Sanctions do not automatically follow an adverse judgment or ruling nor are they warranted where there is the slightest justification for the assertion of a legal right. Walker v. Stegall, 25,423 (La. App.2d Cir. 1/19/94), 631 So.2d 89.
We perceive no manifest error in the WCJ's rejection of sanctions. Pool is merely noting defeated legal arguments made by GNB as his justification for sanctions. Substantially more than an adverse judgment is required to warrant the imposition of sanctions. Diesel Driving Academy, Inc. v. Ferrier, 563 So.2d 898 (La.App. 2d Cir.1990). This assignment lacks merit.

Conclusion
For the reasons expressed, we reverse the WCJ's decision insofar as it found Pool is permanently and totally disabled. We remand the case for a rehabilitation determination in accord with La. R.S. 23:1226 D and for a ruling with regard to expert witness fees, as they may be proper in this instance.[9] We modify the decision to reflect that GNB is not currently entitled to a "Garrett" offset. Finally, we affirm the decision insofar as it rejected Pool's claims for sanctions. Appellate costs are assessed one half to the claimant and one half to the defendants. Costs below are to be fixed by the WCJ.
REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.
HIGHTOWER, J., dissents in part and concurs in part with written reasons.
HIGHTOWER, Judge, dissenting in part and concurring in part.
I agree that the WCJ erred in awarding permanent and total disability to the claimant. That error, however, does not arise from a premature determination but because the evidence establishes that Pool indeed is not permanently and totally disabled.
Granted, under former (and present) La. R.S. 23:1226(D), an award of PTD would be premature in the absence of an evaluation of the employee's rehabilitation potential. But that issue is never presented when the evidence demonstrates, as here, that the claimant has the physical ability to engage in sheltered employment which, under La. R.S. 23:1221(2)(c), bars any award of permanent and total disability.
For permanent total disability, Subsection 1221(2)(c) requires a physical disability to engage in "any employment" regardless of its nature or character, including sheltered employment, even while working in "any pain." As explained by the vocational rehabilitation expert in the instant case, sheltered employment encompasses noncompetitive employment that permits the work to be adjusted to the capacities and capabilities of the individual worker.
At Frost Industries, where such a position has been located for Pool, workers receive at least minimum wage and some earn a higher rate, all based on piecework. Even the claimant's treating physician for many years, Dr. Joffrion, stated that Pool could perform sheltered employment and sedentary work on an intermittent basis if allowed to sit and *159 stand at will, and thus control any pain. The record therefore reflects, and the claimant's attorney agreed in oral argument, that Pool can perform the work described at Frost Industries.
So, there is sheltered employment available for Pool in Shreveport that he is capable of performing with all his limitations. Clearly, too, as previously stated, an ability to engage in even sheltered employment bars an award of permanent total disability under Subsection 1221(2)(c). Put more directly, the award of total and permanent disability by the hearing officer, an award requiring proof by clear and convincing evidence, is manifestly wrong.
Instead, plaintiff should have been awarded supplemental earnings benefits, with credit being granted for temporary total disability payments received after January 1, 1990. See La. R.S. 23:1223(B); Fallen v. New Orleans Police Dept., 97-0022 (La.App. 4th Cir. 07/23/97), 697 So.2d 1077.
I concur that the defendant is not entitled to a "Garrett" offset. Although it is questionable whether "Retirement" should be included in the calculation of the average weekly wage under the circumstances existing here, the ultimate denial of the "Garrett" credit would result under either approach.
Accordingly, I dissent from the remand for a rehabilitation determination. After reversing to award supplemental earnings benefits, I would remand for a calculation of credits due for temporary total disability benefits paid after January 1, 1990.
NOTES
[1] This petition was the first of four petitions filed in the Office of Workers' Compensation.
[2] See Garrett v. Seventh Ward General Hosp., 95-0017 (La.9/22/95), 660 So.2d 841.
[3] Because we reverse the finding that Pool is PTD, we pretermit consideration of the assignments concerning the failure to find a judicial confession, amendment of pleadings, and the grant of a new trial.
[4] The total number of hours worked in the four weeks prior to the accident, including overtime is 137.7 hours. The average number of hours per week equals 34.43 hoursless than the forty hour presumption.
[5] Pool earned 40 hours of pay for each week of vacation.
[6] In the four work weeks prior to the accident, Pool worked 152 regular hours earning $9.49 per hour. Additionally Pool worked 26.7 overtime hours earning $14.24 (time and a half) per hour.
[7] The parties stipulated that Pool receives $1008 per month in SSI and that the employer funds 50% of that payment. The parties dispute whether that monthly payment should be divided by 4 or 4.3 in determining the weekly wage. Division by 4, as the WCJ used, would provide a weekly employer funded SSI payment of $116.31. Because we find that there is no Garrett offset, we need not reach this issue. However, we use the greater value urged by GNB for demonstration purposes.
[8] Article 863 D states:

If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.
[9] See Brooks v. Leggett & Platt, Inc., 94 0617 (La.App. 1st Cir. 11/9/95), 665 So.2d 432; Arriaga v. Reliance Ins. Co. of Illinois, 564 So.2d 832 (La.App. 3d Cir.1990) citing Taylor v. Dandy, 493 So.2d 654 (La.App. 2d Cir.1986).