618 So.2d 618 (1993)
Ellen FREEMAN, Plaintiff-Appellee-Appellant,
v.
POULAN/WEED EATER, Defendant-Appellant-Appellee.
No. 24467-CA.
Court of Appeal of Louisiana, Second Circuit.
May 5, 1993.
*621 Mill, Timmons & Flowers by William T. Allison, Shreveport, for appellant.
Cook, Yancey, King & Galloway by Eskridge E. Smith, Jr., Shreveport, for appellee.
Before MARVIN, SEXTON, BROWN, STEWART and WILLIAMS, JJ.
SEXTON, Judge.
In this worker's compensation case, both the plaintiff, Ellen Freeman, and the defendant, Poulan/Weed Eater, appeal the administrative hearing officer's judgment, which found that plaintiff's carpal tunnel syndrome was work-related and left her temporarily totally disabled and entitled to rehabilitation services. We affirm in part, reverse in part, and remand.

FACTS
Ellen Freeman was hired as a warehouse worker by Poulan/Weed Eater on November 2, 1987. On November 11, 1988, plaintiff injured her right wrist while lifting two reels of chain with a combined weight of 50 pounds. She reported the injury to her supervisor, who filled out an accident report. Plaintiff was then sent to Dr. Don Angle, the company doctor. Dr. Angle diagnosed plaintiff's injury as a sprained wrist. Plaintiff was given anti-inflammatory medication and allowed to return to work.
On November 30, 1988, plaintiff again injured her wrist while lifting boxes at work. Dr. Angle recommended that plaintiff wear a splint on her right wrist while on duty and refrain from lifting objects over 15 pounds. Plaintiff returned to work wearing the splint, but her wrist still continued to ache. Plaintiff's left wrist soon began to hurt because she was favoring her right wrist. Eventually, plaintiff was wearing splints on each wrist while at work, but her wrists still continued to hurt. Plaintiff continued to see Dr. Angle, who referred her to Dr. David Adams on February 28, 1989. As a result of nerve conduction studies performed by Dr. Adams on the plaintiff's wrists, plaintiff sought treatment from Dr. Clinton McAlister of the Bossier Orthopedic Clinic on March 20, 1989.
Dr. McAlister diagnosed plaintiff's injury as carpal tunnel syndrome. On April 23, 1989, Dr. McAlister performed carpal tunnel release surgery on the plaintiff's right hand. On June 16, 1989, Dr. McAlister released plaintiff to return to work with certain restrictions. However, the restrictions placed on her did not permit plaintiff to return to her job as a warehouse worker. *622 Plaintiff has not returned to work since her surgery.
Poulan/Weed Eater retained Carol Gill and Sonya Kilpatrick, rehabilitation counselors with Crawford and Company, to develop a plan for vocational rehabilitation for the plaintiff. Plaintiff initially wanted to complete a four-year college degree program in management. However, Poulan/Weed Eater refused this request, and Crawford and Company was instructed to locate employment for plaintiff for which she was qualified by her training and experience. Certain jobs were located for the plaintiff, but she never applied for any of these jobs. Meanwhile, plaintiff enrolled in a four-year college degree program in management on June 4, 1990. Eventually, Poulan/Weed Eater referred plaintiff to Dr. Gordon Mead to make sure that plaintiff was capable of performing the jobs which had been found for her. Dr. Mead's medical examination determined that plaintiff was capable of performing at least two jobs which had been located for her by Crawford and Company.
On September 10, 1990, Poulan/Weed Eater terminated worker's compensation benefits and this claim resulted. The case was tried before the administrative hearing officer, who entered a judgment on September 27, 1991. The hearing officer found that plaintiff's carpal tunnel syndrome was job-related, and this occupational disease resulted in a disability which restricted plaintiff's work ability to the lifting of 10 pounds frequently and 25 pounds occasionally. Based upon these restrictions, Ellen Freeman was deemed unable to return to her previous employment as a warehouse worker.
The hearing officer also found that Ellen Freeman was offered work for 40 hours per week in the four full weeks prior to her injury, but regularly and at her own discretion she chose to work less than 40 hours per week. Based on the hours she actually worked in the four full weeks prior to the alleged injury, plaintiff's average weekly wage was found to be $207.91 and her weekly compensation rate was found to be $138.61. This amount was paid by Poulan/Weed Eater to her for a total of 72 weeks from April 24, 1989, to September 10, 1990. The hearing officer did not include fringe benefits in the calculation of plaintiff's average weekly wage as no proof of the amount of these benefits was offered at trial.
The hearing officer found Poulan/Weed Eater was arbitrary and capricious in the rehabilitation efforts by it in this matter. The hearing officer determined that the jobs identified by Crawford and Company did not form a reasonable basis for termination of compensation benefits on September 10, 1990. In finding that the actions of Poulan/Weed Eater in terminating plaintiff's benefits were arbitrary and capricious, the hearing officer awarded penalties in the amount of 12 percent and attorney fees in the amount of $5,000. The hearing officer also ruled that the plaintiff should be placed on temporary, total disability benefits in the amount of $138.61 per week until such time as the defendant has provided a minimum of 26 weeks of meaningful rehabilitation. The defendant was also ordered to pay plaintiff 55 weeks of past-due total temporary disability in the amount of $7,623.55 for the period from September 11, 1990, through the date of the hearing officer's judgment.

PLAINTIFF'S DISABILITY
Defendant's threshold contention on appeal is that plaintiff did not prove that her job at Poulan/Weed Eater was the cause of her occupational disease. Defendant contends that plaintiff's burden of proof is an overwhelming preponderance of evidence under LSA-R.S. 23:1031.1 D because the plaintiff's carpal tunnel syndrome was contracted within one year of her initial employment at Poulan/Weed Eater and that defendant failed to meet this burden. Defendant points, in this respect, to Dr. McAlister's testimony that his notes indicated that the plaintiff told him at their first visit that she had been having periodic difficulty with her hands since October of 1988. Defendant also contends that the administrative hearing officer erred in finding that plaintiff had an occupational disease that *623 restricted her to the lifting of 10 pounds frequently and 25 pounds occasionally.
We initially address defendant's contention that plaintiff's job was not the cause of her carpal tunnel syndrome. In this regard, LSA-R.S. 23:1031.1 provides in pertinent part:
§ 1031.1. Occupational disease
. . . .
B. An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section.[1]
. . . .
D. Any occupational disease as herein listed contracted by an employee while performing work for a particular employer in which he has been engaged for less than twelve months shall be presumed to be non-occupational and not to have been contracted in the course of and arising out of such employment, provided, however, that any such occupational disease so contracted within the twelve months' limitation as set out herein shall become compensable when the occupational disease shall have been proved to have been contracted during the course of the prior twelve months' employment by an overwhelming preponderance of evidence.
(Footnote added.)
The legal test for disability caused by occupational disease is the same as that for disability caused by accident. Crump v. Hartford Accident and Indemnity Company, 367 So.2d 300 (La.1979). An occupational disease has been defined as the result of a series of events often imperceptible in nature which are eventually evidenced in the manifestation of a disability. White v. Johns-Manville Sales Corporation, 416 So.2d 327 (La.App. 5th Cir.1982). Mere knowledge of an employee that she has the disease is not a manifestation of the disability. Ordinarily, for worker's compensation purposes, a disease does not develop or manifest itself where an employee continues at her employment with increasing difficulty, until the time when the claimant's employment terminates, since an earlier date is conjectural so long as the employee actually continues to perform her duties. Crump v. Hartford Accident and Indemnity Company, supra.
We note that defendant's contention that plaintiff contracted carpal tunnel syndrome within a year of her employment implicitly contends that there is a distinction between the word "contracted" as used in LSA-R.S. 23:1031.1 D and the term "manifestation" of an occupational disease which is found in the jurisprudence. Common usage of these words connotes that one would ordinarily contract a disease before the disease would manifest itself. However, we have been unable to locate jurisprudence or scholarly comment discussing the distinction between these two terms.
Assuming arguendo that contraction of a disease is different from and occurs before manifestation of a disease, the instant record preponderates that plaintiff's occupational disease was both contracted and manifested more than a year after she became employed. It is clear that any incidents involving plaintiff's wrists occurred over a year after plaintiff's initial employment of November 2, 1987. Plaintiff injured her wrist on November 11, 1988, and again on November 30, 1988. She was diagnosed as having carpal tunnel syndrome by Dr. McAlister in March of 1989.
The only evidence indicating plaintiff may have contracted the disease within a *624 year of her employment is found in Dr. McAlister's testimony. There, he briefly mentioned that his notes indicated that when he first examined the plaintiff in March of 1989, she said she had been having "trouble" with her wrists since October of 1988. This statement was not expanded upon during Dr. McAlister's testimony. Plaintiff was asked if she had told Dr. McAlister such, and she stated she had previously been treated by Dr. McAlister, but denied telling him that she had experienced this type of trouble prior to November of 1988. Thus, on the entirety of this record, we conclude that the evidence preponderates that plaintiff's occupational disease was contracted and manifested more than a year after her initial employment. Therefore, the increased burden of proof under LSA-R.S. 23:1031.1 D is not applicable. The plaintiff only had to prove by a preponderance of the evidence that her disability was caused by the employment-related disease. See Laurendine v. Fischbach & Moore, Inc., 398 So.2d 1220 (La. App. 4th Cir.1981).
Whether the plaintiff employee has carried her burden of proof and whether the plaintiff employee's testimony is credible are questions of fact to be determined by the trier of fact. Lloyd v. IMC Fertilizer, Inc., 557 So.2d 1078 (La.App. 2d Cir.1990), writ denied, 561 So.2d 102 (La. 1990). It is a fundamental rule of appellate review that a trial court's factual determinations will not be disturbed on appeal in the absence of a showing of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The record supports the administrative hearing officer's decision that plaintiff's carpal tunnel syndrome was related to her job. Plaintiff testified that her job involved lifting objects 50 to 60 percent of the time. Plaintiff injured her wrist on two separate occasions while trying to lift heavy objects. Both Dr. McAlister and Dr. Mead noted that heavy lifting could contribute to the development of carpal tunnel syndrome. Dr. McAlister, plaintiff's treating physician, also testified that there was a causal relationship between plaintiff's job activities and her carpal tunnel syndrome.
We also find the record supports the hearing officer's determination that the plaintiff's disability restricted her work ability to the lifting of 10 pounds frequently and 25 pounds occasionally. Dr. McAlister stated that the plaintiff would be unable to do any heavy lifting, fine repetitive motion, or continuous grasping in regards to her future employment capabilities. Dr. Mead agreed with Dr. McAlister and stated that plaintiff would be unable to do any type of work in the future which required heavy lifting or the use of her right hand for any repetitive work. In fact, the hearing officer's lifting restrictions were based on an estimated functional capacity assessment which was completed by Dr. Mead.

BENEFITS DUE
Defendant's next contentions are that the hearing officer erred in concluding that plaintiff was entitled to weekly benefits from the date compensation was terminated to the date of the judgment for 55 weeks of past-due disability payments in the amount of $7,623.55, and similarly that the hearing officer erred in awarding rehabilitation services and disability benefits relating thereto of $138.61 for a minimum of 26 weeks.
In support thereof, defendant contends the hearing officer erred in finding that defendant failed to identify jobs plaintiff was qualified for earning wages equal to or greater than her pre-accident wage. Defendant asserts that the plaintiff was qualified for job positions which were located for her by Crawford and Company. Plaintiff failed to apply for any of these jobs. Defendant also contends the hearing officer erred in finding that the jobs located for plaintiff did not form a reasonable basis to terminate compensation benefits.
Dr. McAlister released plaintiff to return to work with certain restrictions on June 16, 1989. Plaintiff was unable to return to her previous job as a warehouse worker because of these restrictions. Plaintiff did apply for the position of traffic operations clerk at Poulan/Weed Eater. However, *625 this position involved a great deal of repetitive hand movement. Thus, plaintiff did not get this job because of her medical restrictions.
In March of 1990, a functional capacity assessment was completed which showed that plaintiff was capable of returning to sedentary or light duty work. Carol Gill of Crawford and Company began a labor market survey by searching for jobs which plaintiff could perform based on her functional capacity assessment. Ms. Gill located several possible positions involving light or sedentary work which ranged in salary from $600 to $1,100 per month. After Ms. Gill was transferred, Sonya Kilpatrick also located several employment possibilities, of which plaintiff was notified by mail. Plaintiff admitted she received correspondence from Crawford and Company concerning these employment possibilities. However, plaintiff never applied for any of the jobs as she had enrolled in college on June 4, 1990.
In July of 1990, plaintiff was referred to Dr. Gordon Mead by the defendant. Poulan/Weed Eater wanted to determine if plaintiff was capable of performing two possible jobs which had been located for her, that of customer service representative and management trainee. Dr. Mead's medical examination revealed that plaintiff's work ability should be restricted to the lifting of 10 pounds frequently and 25 pounds occasionally. However, Dr. Mead did state that plaintiff would be capable of performing the duties of customer service representative and management trainee. Dr. McAlister also testified that he approved of these jobs and indicated that plaintiff could perform these job duties. The defendant relied on these two jobs, for which the plaintiff did not apply, to terminate benefits.
In the instant case, Poulan/Weed Eater paid total benefits of $9,480.96 to plaintiff from April 24, 1989, to September 10, 1990. Defendant paid 16 weeks of "temporary total disability benefits" of $131.68 per week and 56 weeks of "supplemental earnings benefits" of $131.68 per week with all benefits being terminated on September 10, 1990. It was on this date when the defendant asserted that employment was available at or prior to that time which paid wages such that plaintiff would not be entitled to compensation.
If defendant was correct, any benefits to which plaintiff would be entitled subsequent to September 10, 1990, would be supplemental earnings benefits which are defined as an inability to earn 90 percent or more of the wages which the employee received at the time of the injury. LSA-R.S. 23:1221(3); Tassin v. Cigna Insurance Company, 583 So.2d 1222 (La.App. 3rd Cir.1991).
As an injured employee, plaintiff bears the burden of proving by a preponderance of the evidence that the injury resulted in her inability to earn 90 percent or more of wages received at the time of injury. The employer may preclude these benefits by establishing that the employee is physically able to perform work that was either offered or tendered by the employer or any other employer or proven available to the employee in the employee's or employer's community or reasonable geographic region. An employee able to earn, but not earning 90 percent or more of her former wages is not entitled to supplemental earnings benefits. Daigle v. Sherwin-Williams Company, 545 So.2d 1005 (La. 1989); Prudhomme v. DeSoto Professional Home Health Services, 579 So.2d 1167 (La.App. 2d Cir.1991). If the employer meets this burden, the employee must show by clear and convincing evidence, unaided by any presumption of disability that she is unable to perform the employment offered or available solely as a consequence of substantial pain. See Lubom v. L.J. Earnest, Inc., 579 So.2d 1174 (La.App. 2d Cir.1991).
Defendant's representative, Crawford and Company, located several positions for which plaintiff never applied. These ranged from customer service representative paying the minimum wage to management trainee paying $1,100 per month. The former, at minimum wage, obviously is less than 90 percent of plaintiff's previous weekly wage. Simple mathematics indicates *626 that if the plaintiff is able to perform a job earning $4.95 an hour, she is not entitled to SEBs (.9 X $5.50 = $4.95). The plaintiff has not applied for these positions and thus has not attempted to perform any of the tasks involved. Plaintiff has thus failed to prove her entitlement to SEBs, much less the appropriate level.
First, plaintiff failed in her burden of proving that a work-related injury rendered her unable to earn 90 percent of her pre-injury wages, as plaintiff made no attempt to apply for jobs located for her by Crawford and Company. Further, Poulan/Weed Eater proved that plaintiff was physically able to perform work which was available to the plaintiff in her community. Finally, plaintiff made no showing that she was unable to perform the employment offered or available because of substantial pain. Accordingly, we find the termination of benefits on September 10, 1990, was proper as plaintiff has not borne her burden of proof. We reverse and set aside the hearing officer's award of 55 weeks past-due temporary total disability in the amount of $7,623.55.
Defendant's contention with respect to rehabilitation services and disability benefits in conjunction therewith likewise has merit.
LSA-R.S. 23:1226 provides in pertinent part:
§ 1226. Rehabilitation of injured employees
A. When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services.
....
A distinction exists between the entitlement to rehabilitation and the requirements of rehabilitation. The initial inquiry is whether a claimant is entitled to rehabilitation services. Works v. Trinity Universal Insurance Company, 501 So.2d 1045 (La.App.2d Cir.1987), writ denied, 503 So.2d 480 (La.1987). An injured employee is entitled to rehabilitation services only when her injury precludes her from earning wages equal to wages earned prior to the injury. Long v. Manville Forest Products Corporation, 593 So.2d 854 (La. App.2d Cir.1992), writ not considered, 595 So.2d 649 (La.1992).
Plaintiff apparently wanted the defendant to provide her with a four-year college education as rehabilitation. The defendant is under no obligation to do such. Killen v. Continental Insurance Company, 514 So.2d 711 (La.App.2d Cir.1987). As previously chronicled in detail, plaintiff failed to apply for the jobs which the defendant located and has insisted upon pursuing a higher education, a laudable objective. However, under these circumstances, plaintiff has not proved that her injury precluded her from earning wages equal to wages earned prior to her injury. The record indicates that plaintiff was qualified for the job positions which were located for her.
In short, plaintiff has failed to show an entitlement to rehabilitation. Accordingly, the hearing officer's award of temporary total disability benefits in the amount of $138.61 per week until such time as defendants have provided a minimum of 26 weeks of meaningful rehabilitation is reversed and set aside.

PENALTIES AND ATTORNEY FEES
Defendant next contends the hearing officer erred in finding its action of terminating plaintiff's worker's compensation benefits to be arbitrary and capricious. Therefore, defendant contends the hearing officer erred in awarding penalties of 12 percent and attorney fees of $5,000.
Under LSA-R.S. 23:1201 E, penalties are appropriate only if the employer does not have a reasonable basis on which to controvert the claimant's claim to compensation. An award of attorney fees requires a finding that the employer's actions were arbitrary and capricious or without probable cause under LSA-R.S. 23:1201.2. Whether or not a refusal to pay benefits is arbitrary, capricious, or without probable cause depends primarily on the facts known to the employer at the time of its action. Lubom v. L.J. Earnest, Inc., *627 supra. Penalties are stricti juris and should be imposed only if the facts clearly negate good faith and just cause in connection with the refusal to pay. Lubom v. L.J. Earnest, Inc., supra.
In the instant case, Dr. McAlister released plaintiff to return to light duty work on June 16, 1989. Crawford and Company sent plaintiff a list of several employment possibilities in July of 1990. However, plaintiff never applied for any of these positions as she was attending college. Poulan/Weed Eater relied on the medical opinion of Dr. Mead that plaintiff could perform at least two of these jobs which had been located for her. Under the circumstances set forth above, we cannot say that Poulan/Weed Eater's actions were arbitrary, capricious, or without probable cause in terminating plaintiff's benefits. Accordingly, we reverse and set aside the hearing officer's award of penalties and attorney fees.

PLAINTIFF'S APPEAL
Plaintiff also appealed, alleging the administrative hearing officer erred in finding that plaintiff was offered 40 hours of work per week, but regularly and at her own discretion worked less. Plaintiff contends it was error to base her average weekly wage on less than a 40-hour week. Plaintiff contends her hourly wages should have been computed under LSA-R.S. 23:1021(10)(a)(i), which provides:
If the employee is paid on an hourly basis and the employee is offered employment of 40 hours or more, his hourly rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or 40 hours, whichever is greater....
rather than LSA-R.S. 23:1021(10)(a)(ii), which provides:
If the employee is paid on an hourly basis, an employee is offered employment of 40 hours or more but regularly, and at his own discretion, works less than 40 hours per week for whatever reason, then, the average of his total earnings per week for the four full weeks preceding the date of the accident....
Plaintiff contends the phrase "regularly and at his own discretion" is in conflict with the phrase "for whatever reason," and the conflicting phrases should be interpreted liberally in favor of the injured worker. Plaintiff contends she only missed work when her health or that of her diabetic daughter required it.
In White v. Johns-Manville Sales Corporation, supra, the court was faced with the question of determining the proper compensation rate to be awarded in an occupational disease case. The defendant argued the proper rate to be used was the compensation rate in existence at the date of "injury" or last injurious exposure, while the plaintiff wanted to utilize the compensation rate at the date of disability. After careful analysis of LSA-R.S. 23:1031.1 and the occupational disease jurisprudence, the court held that the date of disability was the correct time from which to determine the compensation rate.
In the instant case, plaintiff's compensation rate was based on the hours she actually worked in the four full weeks prior to her injury on November 11, 1988. Obviously, this is the incorrect compensation rate since plaintiff's date of disability was April 23, 1989. We are unable to calculate the compensation rate because the record before us does not contain the hours worked by the plaintiff in the four full weeks prior to April 23, 1989. Because of this fact, we are also unable to determine whether LSA-R.S. 23:1021(10)(a)(i) or (10)(a)(ii) should apply. Accordingly, the case will be remanded to the trial court for a proper determination of plaintiff's compensation rate commencing from her date of disability.
Plaintiff also contends the hearing officer committed error in failing to include the value of plaintiff's fringe benefits in the computation of her average weekly wage. Plaintiff argues the administrative hearing officer overlooked relevant portions of Joint Exhibit 1, which listed the monthly fringe benefits paid to plaintiff by the defendant. These fringe benefits included *628 health and life insurance premiums which were paid by the defendant. Plaintiff contends these amounts should have been included when determining plaintiff's average weekly wage.
The value of fringe benefits provided by the employer to the employee will be included in the calculation of weekly wages for the purposes of determining the compensation rate provided the giving of such benefits was fairly contemplated by the parties as they entered the contract of employment as a factor in fixing the amount of the employee's salary. Vaughan v. Insurance Company of North America, 482 So.2d 1014 (La.App. 3rd Cir. 1986); Morgan v. Equitable General Insurance Company, 383 So.2d 1067 (La. App. 3rd Cir.1980).
In the instant case, plaintiff was hired on November 2, 1987, but her benefits did not begin until February 2, 1988. There was no evidence presented that the giving of these benefits was contemplated by the parties as a factor in fixing the amount of plaintiff's salary. Therefore, we find no abuse of discretion in the hearing officer's failure to include these fringe benefits in the computation of plaintiff's average weekly wage.
Finally, plaintiff contends the hearing officer erred by failing to award attorney fees in a reasonable amount. In light of our determination that attorney fees were improperly awarded, this assignment of error is without merit.

CONCLUSION
In summary, we have determined that the trial court correctly decided that plaintiff's carpal tunnel syndrome was job-related and was an occupational disease. We have further concluded that plaintiff was entitled to be paid benefits until September 10, 1990. However, from the record we are unable to determine whether or not the proper formula was used in calculating these benefits and are remanding the case to the trial court to determine if plaintiff is entitled to further benefits for that period. We have determined that the trial court erred in the remainder of its judgment in ordering temporary total disability benefits in the amount of $138.61 for 26 weeks of "meaningful rehabilitation." We further determine that the trial court also erred in concluding that the claimant was entitled to 55 weeks of past-due total disability benefits in the amount of $7,623.55 from September 11, 1990, through the date of the trial court order. Finally, the trial court erred in assessing penalties and attorney fees.
The foregoing considered, it is ordered, adjudged, and decreed that plaintiff suffered the work-related occupational disease of carpal tunnel syndrome and was temporarily totally disabled from April 24, 1989, to September 10, 1990. The case is remanded to the trial court to determine if the weekly compensation rate paid of $138.61 was adequate in accordance with LSA-R.S. 23:1021(10)(a)(i) and (ii). All other aspects of the judgment appealed from are reversed and set aside. Costs herein are assessed equally between the plaintiff and the defendant.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
BROWN, Judge, dissenting in part.
The trier of fact found that:
Because she lacks management experience claimant is not qualified for those jobs which approximate her pre-accident wage. Therefore, the hearing officer finds that meaningful rehabilitation is due. The [possible] jobs identified [in the labor market survey offered] by Defendants at trial do not form a reasonable basis for their termination of compensation benefits ... [but] ... instead they indicate that Defendants should proceed to the next level of rehabilitation, retraining of the claimant so that she will be able to earn a wage equal to her pre-injury wage.
The initial counselor retained by defendant recommended a rehabilitation plan which defendant rejected. Thereafter, a labor market survey was conducted. Another counselor suggested plaintiff apply for an opening as assistant manager at *629 McDonalds; however, this position required management experience in the fast food industry. No evidence was presented that plaintiff possessed such skills.
Under these circumstances, I cannot say that the trier of fact was clearly wrong/manifestly in error. I would affirm and, therefore, respectfully dissent from that part of the majority opinion which reverses the hearing officer.
NOTES
[1] LSA-R.S. 23:1031.1 B was amended by Louisiana Acts 1990, No. 943, § 1, to include work-related carpal tunnel syndrome as an occupational disease. Section 2 of this act provided that "the specification herein of carpal tunnel syndrome as an occupational disease is intended only as a clarification of the prior law."