PITMAN, J.
| defendants Graphic Packaging International, Inc. (f/k/a Riverwood International USA, Inc., Riverwood International Corporation, Olinkraft, Inc., and Manville Forest Products Corporation), and Olin Corporation, (hereafter, “Graphic” and “Olin,” respectively), appeal the judgment of the trial court rendered in favor of Plaintiffs Hugh Calhoun, Roy Robert, Ronald Ivy, Jerry Hall, Tommy Ford and Vernice (Joe) Pleasant, awarding each plaintiff $50,000 for occupational noise-induced hearing loss (“NIHL”) caused by exposure to high noise levels at their employment at a manufacturing facility in West Monroe, Louisiana. For the reasons stated herein, we reverse the judgment of the trial court and find that NIHL is an “occupational disease” under La. R.S. 28:1031.1 and Defendants are entitled to the tort immunity provided to employers under the Louisiana Workers’ Compensation Act (“LWCA”). Further finding that the trial court lacked subject matter jurisdiction, we dismiss Plaintiffs’ suits.
FACTS
Plaintiffs are employees and former employees of a manufacturing plant located in West Monroe, Louisiana, who have worked at the plant currently owned by Graphic, and its predecessors, including Olin, since the 1960s. It is not disputed that Olin Mathieson Chemical Corporation operated the facility from 1955 until 1967, when Graphic assumed control of the mill.[1] Multiple claimants filed various separate actions for hearing loss allegedly sustained as a result of being “occupationally exposed to hazardous levels of industrial noise.” Of the multiple claimants, six were Lchosen by the parties, from three separately filed captioned lawsuits, to represent the “first flight” of plaintiffs whose cases would be tried together.
The action of James Clifford Arrant, et al v. Graphic Packaging International, Inc., et al, was filed on February 1, 2005. Plaintiff Jerry Hall was added to the Arrant matter by a first amended petition filed on August 6, 2007. The case of W.H. Auttonberry, et al v. Graphic Packaging International, Inc., et al, was filed on February 1, 2005. Plaintiffs Hugh Calhoun and Roy Robert were 2 of 16 original plaintiffs. Plaintiff Ronald Ivy was added to the Auttonberry matter by a second amended petition filed on January 15, 2008. The case of Melvin Elvis Bordelon, et al v. Graphic Packaging International, Inc., et al, was filed on December 7, 2005. Plaintiffs Tommie Ford and Joe Pleasant *927 were 2 of 82 original plaintiffs in that suit. On or about January 16, 2008, Plaintiffs, with the exception of Ivy and Ford, filed supplemental and amending petitions for damages in each of the cases, adding Olin as a party Defendant.
Graphic’s answer asserted an affirmative defense that it was Plaintiffs’ employer and, as such, entitled to tort immunity under the LWCA because it provided the employees’ exclusive remedy for the damages alleged.
Pertinent preliminary proceedings filed in the matter included Defendants’ peremptory exception raising the objection of prescription, claiming that Plaintiffs knew or should have known more than one year before suit was filed that they worked in a noisy environment, that noise could cause hearing loss and that they allegedly suffered hearing loss and |/ailed to file suit within that one-year prescriptive period. Plaintiffs invoked the legal theory of contra non valentem non currit prescriptio as an exception to the general rule of prescription and claimed that prescription does not run against a party who is unable to act. The trial court overruled Defendants’ objection of prescription.
Defendants also filed a motion for summary judgment claiming that they were entitled to tort immunity under the LWCA, contending that it covered the damages alleged as either having been caused by an “accident” within the meaning provided therein, or as an “occupational disease.” The trial court denied the motion for summary judgment on the basis that the gradual hearing loss alleged by Plaintiffs was not caused by an accident and, thus, was not compensable under the LWCA. The case proceeded as a tort action.
At the 14-day trial, the six plaintiffs testified that they had worked at the plant in West Monroe at various jobs and in different parts of the plant for decades. Mr. Hugh Calhoun was the earliest employee, having begun working there in 1956. He retired in 1998. All other Plaintiffs, except Mr. Tommie Ford, who was still employed there as of the date of the trial, retired between 2004 and 2007.
Plaintiffs uniformly testified to the extreme level of noise in the plant and complained that the noise was so loud people had to yell to be heard and had to read lips and use hand signals to understand what others were communicating. Plaintiffs all testified that their hearing was not tested on a regular basis by their employer and that, when their hearing was tested, they 14were not provided with the results of the tests or told that their hearing was being affected by the level of noise in the plant. Further, Plaintiffs testified that they were not provided with hearing protection until the late 1980s or early 1990s. Plaintiffs testified that the loss of their hearing occurred so gradually over a long period of time that they were not aware of the loss of function until approximately 2004 when their attorneys had them tested by experts. Some Plaintiffs also complained of constant tinnitus, or ringing in the ears.
Plaintiffs testified that after the hearing tests were conducted in 2004, they were fitted with sample hearing aids to determine if they would be of benefit to them. Five out of six of the plaintiffs testified that their hearing was better with the use of the hearing aids, although nothing alleviated the tinnitus suffered by some of them.
Plaintiffs’ expert in audiology, Dr. Ross Roeser, Ph.D., conducted hearing exams on the six plaintiffs and fitted them with hearing aids and conducted further tests to determine whether the plaintiffs were helped by the hearing aids. His testimony included a lesson on the anatomical struc *928 ture of the ear, as well as a discussion of the nerves which carry sound to the brain. Dr. Roeser testified that the snail-shaped structure is the auditory portion of the inner ear called the cochlea. He explained that the cochlea has 2½ turns, which, if “unrolled” into a longitudinal structure, could be said to be “tonotopically” organized. He stated that tonotopically means that each distinct anatomical part is responsible for a different frequency and that high frequencies of sound are heard close to where the | ¡¡mechanical force enters the cochlea. Dr. Roeser further testified that the six plaintiffs appeared to have normal hearing of speech sounds, but had varying degrees of hearing loss at high frequencies.
Dr. Roeser stated that, when evaluating the effect of noise on hearing, the two most important factors to be considered are intensity and time. After an examination of the noise levels at the plant, which exceeded 85-90 decibels, and considering the amount of time each plaintiff spent in the plant per shift and per year, Dr. Roes-er’s opinion was that Plaintiffs had been exposed to excessive noise levels, and that occupational noise was a “substantially contributing factor or cause of their hearing loss.”
The deposition of Dr. Lawrence Danna, M.D., Plaintiffs’ expert in the field of oto-laryngology, was admitted in evidence. Dr. Danna evaluated all six plaintiffs and found that each had suffered hearing loss as a result of their employment at the plant. Dr. Danna’s opinion was that the employment with Graphic was the primary cause of Plaintiffs’ hearing loss.
After the very lengthy trial, the trial judge issued detailed reasons for judgment. The trial court did not mention the issue regarding tort immunity raised by Defendants as an affirmative defense or in the motion for summary judgment. The reasons for judgment note that Plaintiffs brought their action for recovery based on theories of negligence for failure to provide a safe place to work causing Plaintiffs to suffer hearing loss and strict liability due to Defendants’ ownership, custody and control of the West Monroe facility. The trial court discussed negligence, liability, | (¡causation, duty/risk and the need for Defendants’ conduct to be a substantial contributing cause of Plaintiffs’ hearing loss.
In summary, the trial court found that the evidence established that the daily, constant exposure of Plaintiffs to decades of hazardous levels of industrial noise while employed by Defendants was a substantial and significant cause-in-fact of their hearing loss and that any other potential cause pales in comparison. The trial court further concluded that Plaintiffs had suffered permanent and irreversible loss of hearing in varying degrees affecting every aspect of their lives and further stated that, although various devices, including hearing aids, may help in a given situation, they will not replace the loss of natural hearing.
The trial court also stated that it was mindful that each individual Plaintiff must be awarded damages according to his particular facts and circumstances; but, even so, considering the evidence, uniformity of the damage awards was mandated by the evidence. For those reasons, and Plaintiffs’ stipulation to the recovery of no more than $50,000 per claim, the court awarded $50,000 in damages to each Plaintiff, together with legal interest thereon from the date of judicial demand until paid.[2]
| ./Defendants now appeal.
*929 DISCUSSION
Defendants contend the trial court erred in ruling that Plaintiffs’ claims are not based on an occupational disease, which, had the court so found, would have barred Plaintiffs’ tort suit under the exclusivity provision of the LWCA. This decision was made by the trial court when it denied Defendants’ motion for summary judgment seeking recognition of the tort immunity granted to employers under the LWCA. Defendants contend that, at all times during their alleged exposure to noise, Plaintiffs were employed by Defendants, and their alleged injuries arose out of and in the course of their employment.
Before beginning the discussion of La. R.S. 23:1031.1, we note that, although prior to 1975 these particular plaintiffs, in theory, might have been able to file a tort suit against their employers, their gradual hearing loss had not yet manifested itself so that any claim was possible. Because the progression of their loss was so gradual that they did not recognize it had occurred, Plaintiffs apparently could not, and in fact did not, assert a cause of action until more than 25 years after the statute was amended. The greatest portion of the damage to their hearing was incurred in the years following 1975. For that reason, we will not linger on that portion or interpretation of the LWCA by which litigants were required to show an accident-caused injury. Instead, we focus this opinion on that portion of the LWCA which defines “occupational disease” and makes it compensatory.

\ ^Application of La. R.S. 23:1031.1, the “Occupational Disease” statute

The legislature first added a provision for occupational disease claims to the LWCA in 1952. The coverage provided was only for a schedule of diseases, which did not include hearing loss. See Rando v. Anco Insulations, Inc., 08-1163 (La.5/22/09), 16 So.3d 1065.
In 1975, La. R.S. 23:1031.1 was revised to amend the provision for coverage of an “occupational disease” by removing the list of specific diseases which was previously included and substituting an omnibus definition covering “only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process or employment in which the employee is exposed to such disease.” La. Acts 1975, No. 583, § 2. One of the purposes of La. R.S. 23:1031.1 is to relieve employees of the almost impossible task of proving an “accident” in connection with an occupational disease. O'Regan v. Preferred Enterprises, Inc., 98-1602 (La.3/17/00), 758 So.2d 124.
In 1975, the statute stated as follows:
A. Every employee who is disabled because of the contraction of an occupational disease as herein defined, or the dependent of an employee whose death *930 is caused by an occupational disease, as herein defined, shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment. (Emphasis added.)
B. An occupational disease shall mean only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease.
| aIn 1989, subsection (B) of the statute was amended to substitute “means only” for “shall mean only” and to add a sentence listing specific exclusions:
B. An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related or perivas-cular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section.
In 1990, subsection (B) was amended to add, as the second sentence, “Occupational disease shall include injuries due to work-related carpal tunnel syndrome.”
Today, La. R.S. 23:1031.1(H) contains the exclusive remedy provision of the statute and is the same as it was originally in 1952. La. R.S. 23:1031.1(H) provides:
The rights and remedies herein granted to an employee or his dependent on account of an occupational disease for which he is entitled to compensation under this Chapter shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents or relatives.
The question of whether a disease is compensable under the LWCA is a legal determination involving interpretation bf a statute. Terrance v. Dow Chemical Co., 06-2234 (La.App. 1st Cir.9/14/07), 971 So.2d 1058, writ denied, 07-2042 (La.12/14/07), 970 So.2d 534. When interpreting the LWCA, courts must take into account the basic history and policy of the compensation movement. O’Regan v. Preferred Enterprises, Inc., supra, citing Fruge v. Muffoletto, 242 La. 569, 137 So.2d 336 (1962).
110It is a well-recognized and long-established rule of statutory construction that a statute should be interpreted as a whole to effect the legislative intent and should be construed in such a way as to reconcile, if possible, apparent inconsistencies so that each part is given effect. The primary object is to ascertain and, if possible, give effect to the intention and purpose of the legislature as expressed in the statute. Since the meaning is to be determined from a general consideration of the act as a whole, all parts, provisions or sections must be read together. Each must be considered with respect to, or in the light of, all the other provisions and construed in harmony with the whole. The intent as deduced from the whole will prevail over that of a particular part considered separately. Meaning should be given, if possible, to each and every section, and the construction placed on one portion should not be such as to obliterate another. So, in determining the meaning of a word, phrase or clause, the entire statute is to be considered. O’Regan v. Preferred Enterprises, Inc., supra.
An occupational disease has been defined as the result of a series of events, often imperceptible in nature, which are eventually evidenced in the manifestation of a disability. Vargas v. Daniell Battery *931 Mfg. Co., 93-1249 (La.App. 1st Cir.5/20/94), 636 So.2d 1194, citing Freeman v. Poulan/Weed, Eater, 618 So.2d 618 (La.App. 2d Cir.1993), reversed on other grounds, 630 So.2d 733 (La.1994). See also Coats v. City of Bossier City, 31,164 (La.App. 2d Cir.10/30/98), 720 So.2d 1283, writ denied, 99-0019 (La.2/12/99), 738 So.2d 581. Indeed, with the clear legislative Ininclusion in 1990 of work-related carpal tunnel syndrome as an occupational disease, the legislature indicated that, when cumulative damage or stress processes occur to the body, the resulting condition can be interpreted in the occupational disease context.
Plaintiffs in the case at bar suffered NIHL which, as shown by the evidence, resulted from the cumulative damage or stress process upon the ear caused by constant exposure to excessively loud noises. While the constant roar of noise of a single day at Defendants’ facility cannot be said to cause a personal injury by accident under the LWCA,[3] every minute loss of hearing caused by the noise of the workplace every day for years accumulated to cause NIHL.
The evidence before this court is sufficient to meet the requirements for finding that gradual hearing loss caused by excessive noise is an “occupational disease” under La. R.S. 23:1031.1(B). A causal link between Plaintiffs’ hearing loss and their work-related duties has been established by a reasonable probability by Plaintiffs’ own testimony and that of their experts. It was shown at trial that the “occupational disease” was contracted during the course of employment and was the result of the nature of the employment. More importantly, expert testimony in the form of certified reports, depositions or direct examination in open court supported a finding of an occupational disease. Thus, the evidence established that Plaintiffs’ [^hearing loss “is due to causes and conditions characteristic of and peculiar to” Plaintiffs’ particular trade, occupation, process or employment with Graphic.
In O'Regan v. Preferred Enterprises, Inc., supra, the supreme court discussed the concept of “accident” and stated that it was no surprise that, when the legislature broadened the concept of “accident” by providing for occupational diseases in the workers’ compensation system, it engraft-ed the same phrases in its treatment of occupational diseases in La. R.S. 23:1031(A) and (B). The court examined the history of the occupational disease statute and stated that, although the 1952 and 1958 enactments listed specific occupational diseases, the 1975 amendment removed the list of specific diseases for which there was coverage under the LWCA and substituted a general definition of “occupational disease.”
The supreme court stated that the abandonment of the scheduled list scheme to the general definition scheme should be recognized as an attempt by the legislature to broaden, not restrict, those diseases compensable under the occupational disease act. The supreme court also stated that the important issue in the case before them was to distinguish those occupational diseases covered under the LWCA, because they were peculiar to the nature of the employment, from common diseases not covered by the LWCA, be *932 cause they are not associated with the employment.
Plaintiffs dispute this view of NIHL as an occupational disease based upon other recent rulings of Louisiana courts of appeal. Becker v. Murphy Oil Corp., 10-1519 (La.App. 4th Cir.6/2/11), 70 So.3d 885, writ denied, 11-1750 (La.11/23/11), 76 So.3d 1154; Barbe v. American Sugar Refining, Inc., 11-0544 (La.App. 4th Cir.12/14/11), 83 So.3d 75, writ denied, 12-0124 (La.3/23/12), 85 So.3d 92; McCarthy v. Entergy Gulf States, Inc., 11-0600 (La.App. 3d Cir.12/7/11), 82 So.3d 336, writ denied, 12-0072 (La.3/9/12), 84 So.3d 553; and an unpublished opinion, Allred v. Georgia-Pacific Corp., 12-0424 (La.App. 1st Cir.4/16/13), 2013 WL 1912653, writ denied, 13-1109 (La.8/30/13), 120 So.3d 266.
While each of these cases involved employees with NIHL caused by long-term exposure to loud noises in various facilities, the analyses employed by the courts concerned only the issue of work-related injury from accident and/or the LWCA’s provision for compensation for hearing loss due to a single noise event under La. R.S. 23:1221(4)(p).[4]
In Allred, supra, while the appellate court acknowledged the possibility that NIHL constituted an occupational disease, it reversed the district court’s summary judgment conclusion that NIHL was an occupational disease partially on grounds of insufficient evidence to support 114of the motion for summary judgment. Moreover, the cases cited by Plaintiffs do not specifically state that hearing loss caused by long-term exposure to noise in a work place does not meet the definition of “occupational disease” found in the LWCA. In Wex S. Malone & H. Alston Johnson, III, Workers’ Compensation Law and Practice § 286, in 13 Louisiana Civil Law Treatise (5th Ed.), it is stated:
In a series of cases marked by very little analysis of whether long-term hearing loss is either a “personal injury by accident” or an “occupational disease,” but rather using the amendment to R.S. 23:1221(4)(p) (which actually addresses neither one, but only governs what types of benefits can be received after this is proven under other provisions), it has been held by certain intermediate appellate courts that a tort action may be maintained for long-term hearing loss. See Barbe v. American Sugar Refining, Inc., 83 So.3d 75 (La.Ct.App. 4th Cir.2011); McCarthy v. Entergy Gulf States, Inc., 82 So.3d 336 (La.Ct.App.3d Cir.2011); Becker v. Murphy Oil Corp., 70 So.3d 885 (La.Ct.App. 4th Cir.2011). Barbe and McCarthy have virtually no analysis of the issue and simply cite Becker. At this writing, the supreme court has not resolved the issue.
*933 La. R.S. 23:1031.1 specifically states that an employee who is disabled because of the contraction of an occupational disease shall be entitled to the compensation provided in the LWCA “the same as if said employee received personal injury by accident arising in the course of his employment.” For the foregoing reasons, we find that Plaintiffs’ gradual, but permanent, hearing loss caused by constant exposure to excessive occupational noise is exactly the kind of “occupational disease” covered by the LWCA in La. R.S. 23:1031.1.

Compensability and Remedy

Plaintiffs argue that La. R.S. 1221(4)(p) allows compensation benefits for hearing loss only for permanent hearing loss due to a single traumatic | ir,accident. Thus, Plaintiffs argue that the LWCA provides no remedy for NIHL because its effect on the employee’s ability to work is different from injury for other work place accidents or occupational disease. Citing O'Regan v. Preferred Enterprises, Inc., supra, Plaintiffs argue that the lack of effective remedies under the LWCA for their NIHL allows their recovery in tort.
In O’Regan v. Preferred Enterprises, Inc., supra, the supreme court recognized that “the Legislature cannot completely deprive citizens of the right to seek a remedy either under the [LWCA] or under our general law.” It further held that “[a] conceptual distinction must be made between injuries which do not come within the [LWCA’s] coverage provisions and injuries which are covered, but for which no compensation is payable.” O'Regan v. Preferred Enterprises, Inc., supra. “If the claim is not covered under the [LWCA], then the exclusivity provision does not apply. There has been no quid pro quo and thus the claimant has not lost the right to sue in tort.” Id.
The technical legal issue in O’Regan v. Preferred Enterprises, Inc., supra, involved the statutory presumption of La. R.S. 23:1031.1(D) which effectively barred an employee from making a claim for an occupational disease if he had been employed for less than 12 months in a workplace where the disease was contracted. Thus, O’Regan determined that the employee was specifically precluded by statutory hurdles from receiving benefits under the LWCA, and the employee’s claim was allowed to be pursued through an action in tort.
In Seal v. Gaylord Container Corp., 97-0688 (La.12/2/97), 704 So.2d 1161, the supreme court stated that, once a workers’ compensation claimant has established the existence of an occupational disease, for his illness to be compensable, he must further establish that the illness is disabling. In Price v. City of New Orleans, 95-1851 (La.App. 4th Cir.3/27/96), 672 So.2d 1045, writ denied, 96-1016 (La.10/25/96), 681 So.2d 360, it was found that, although an employee in a workers’ compensation action based on occupational disease was seeking only medical expenses and not disability, his burden of proof was no different.
The compensation to be provided is dependent upon the proof of disability or impairment of function and its relation to the occupational disease. Upon proof of impairment of function, Plaintiffs are entitled to compensation under the LWCA, even if only under La. R.S. 23:1203, which obligates the employer to furnish medical and vocational rehabilitation expenses, prosthetic devices and other expenses. That statute states in pertinent part as follows:
A. In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment *934 recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services. Medical care, services, and treatment may be provided by out-of-state providers or at out-of-state facilities when such care, services, and treatment are not reasonably available within the state or when it can be provided for comparable costs.
An employer has a statutory duty to furnish all necessary medical treatment caused by work-related injury. Dangerfield v. Hunt Forest Products, Inc., 10-1324 (La.App. 1st Cir.3/25/11), 63 So.3d 214, writ denied, 11-0814 (La.6/3/11), 63 So.3d 1019.
Without addressing the issue of whether or not Plaintiffs’ injuries qualify for compensation under the LWCA, because that determination must now be made by the LWCA court, it suffices to point out that the LWCA would provide some compensation to Plaintiffs if they prove their claim, even if La. R.S. 23:1221(4)(p) does not apply because their hearing loss was not caused by a “single traumatic accident.”[5]
For the foregoing reasons, we find that Plaintiffs have alleged a cause of action that is covered by the LWCA as an occupational-disease and that, if proven, would entitle them to seek at least the remedy of medical treatment and prostheses as provided by the LWCA. NIHL is compensa-ble under the LWCA and a remedy is available; therefore, Defendants’ right to tort immunity provided under La. R.S. 23:1031.1(H) is recognized.

Subject matter jurisdiction

Last, as a result of this ruling, this court must note that, because the LWCA provides Plaintiffs’ exclusive remedy, the trial court lacked subject matter jurisdiction to hear this case. The issue of subject matter jurisdiction addresses the court’s authority to adjudicate the cause before it. The issue may be considered at any time, even by the court on its own motion, at any stage of the action. La. C.C.P. arts. 1, 2, 3. Boudreaux v. State, Dept. of Transp. & Dev., 01-1329 (La.2/26/02), 815 So.2d 7. Lack of subject |ismatter jurisdiction may be raised on appeal by the court’s own motion. Nerness v. Christian Fidelity Life Ins. Co., 98-1827 (La.App. 3d Cir.4/21/99), 733 So.2d 146.
The jurisdiction granted by law to workers’ compensation judges is set forth in La. R.S. 23:1310.3(F), which states:
F. Except as otherwise provided by R.S. 23:1101(B), 1361, and 1378(E), the workers’ compensation judge shall be vested with original, exclusive jurisdiction over all claims or disputes arising out of this Chapter, including but not limited to workers’ compensation insurance coverage disputes, group self-insurance indemnity contract disputes, employer demands for recovery for overpayment of benefits, the determination and recognition of employer credits as provided for in this Chapter, and cross-claims between employers or workers’ compensation insurers or self-insurance group funds for indemnification or contribution, concurs proceedings pursuant to Louisiana Code of Civil Procedure Articles 4651 et seq. concerning entitlement to workers’ compensa *935 tion benefits, payment for medical treatment, or attorney fees arising out of an injury subject to this Chapter.
Pursuant to this provision, the Office of Workers’ Compensation is granted exclusive jurisdiction over workers’ compensation claims arising out of the workers’ compensation law. Taylor v. Hanson North America, 08-2282 (La.App. 1st Cir.8/4/09), 21 So.3d 963.
Since this court has found that the judgment of the trial court should be reversed on the basis that Plaintiffs’ sole remedy is in workers’ compensation, we note that the trial court lacked subject matter jurisdiction to hear the cause, which should have been brought in the Office of Workers’ Compensation court pursuant to La. R.S. 23:1310.3.

{^CONCLUSION

For the foregoing reasons, the judgment of the trial court in favor of Plaintiffs, Hugh Calhoun, Tommie Ford, Jerry Hall, Ronald Ivy, Vernice Pleasant, Jr., and Roy Robert, and against Defendants, Graphic Packaging International, Inc., and Olin Corporation, et al, is hereby reversed, and Plaintiffs’ suits are dismissed. Costs of this appeal are assessed to Plaintiffs, Hugh Calhoun, Tommie Ford, Jerry Hall, Ronald Ivy, Vernice Pleasant, Jr., and Roy Robert.
REVERSED AND DISMISSED.
APPLICATION FOR REHEARING
Before BROWN, STEWART, CARAWAY, PITMAN and GARRETT, JJ.
Rehearing denied.

. From this point on, the facility will be referred to as the Graphic mill, as it is referred to by the trial court, regardless of true ownership at the time period in question.

. Shortly, before rendition of this opinion, this court was informed that the judgment rendered in favor of Plaintiff Vernice (Joe) Pleasant and against Graphic and Olin contained *929 an error. Mr. Pleasant was not employed by Olin at any time; in fact, according to testimony presented at trial, he began working at the plant on January 31, 1967, after it was being operated by a former Graphic company. Therefore, this particular judgment rendered against Olin is in error, and Defendant has filed a motion in this court, which is unopposed by the Plaintiff, seeking a correction or modification to delete Olin from it. This motion was referred to the merits of the appeal. La. C.C.P. art. 2164 states that the appellate court shall render any judgment which is just, legal and proper upon the record on appeal. In this case, and considering the ultimate disposition of this appeal, this court considers it just, legal and proper upon the record on appeal to simply note that an error was made which would have no effect on the outcome of the case. The interests of equity and fairness require the court to correct the judgment, which was unquestionably unjust and erroneous due to confusion and the multiplicity of parties.

. La. R.S. 23:1021 defines ''accident” as follows:
(1) ''Accident” means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.

. La. R.S. 23:1221(4)(p) provides:
In cases not falling within any of the provisions already made, where the employee is seriously and permanently disfigured or suffers a permanent hearing loss solely due to a single traumatic accident, or where the usefulness of the physical function of the respiratory system, gastrointestinal system, or genito-urinary system, as contained within the thoracic or abdominal cavities, is seriously and permanently impaired, compensation not to exceed sixty-six and two-thirds percent of wages for a period not to exceed one hundred weeks may be awarded. In cases where compensation is so awarded, when the disability is susceptible to percentage determination, compensation shall be established in the proportions set forth in Subparagraph (o) of this Paragraph. In cases where compensation is so awarded, when the disability is not susceptible to percentage determination, compensation as is reasonable shall be established in proportion to the compensation herein-above specifically provided in the cases of specific disability.

. The Legislature’s provision for supplemental earnings benefits for permanent partial disability for hearing loss caused by a single traumatic accident, and its failure to provide for benefits for hearing loss caused by constant exposure to occupational noise levels sufficient to cause the same permanent partial disability, appear to have been an oversight which cannot be reconciled.